SAMUEL MALCOLMSON v. PATRICK GIBBONS AND DOUGLASS SCOTT.

| 56 | 459 |
|----|-----|
| 92 | 228 |
| 56 | 459 |
| 114 | 97 |

*Arrest for extradition—Evasion of habeas corpus.*

1  It is a misdemeanor in all concerned to shift the custody of a prisoner with intent to evade a writ of habeas corpus. How. Stat. §§ 8596–8.

2.  A statement that a certain person named, described as grand master of a specified lodge in Pennsylvania, has absconded, taking with him the funds of the lodge, charges no crime under the laws of Michigan, and a warrant of arrest, reciting these facts only, would be void. In Michigan the company would have to be incorporated and the officer

hold the funds officially, to make him guilty, as an officer, of embezzlement. How. Stat. § 9151.

3. An officer of justice is bound to know the law, and if he makes an arrest which the facts on which he proceeds would not justify, if true, he is a wrong-doer.

4. Mere hearsay and presumptions will not justify an arrest where the officer making it has no precise information to lay before an examining magistrate, such as would at least justify holding the accused for examination.

5. An arrest made for one purpose cannot be justified by another, and the arresting officer's belief that the prisoner has violated the laws of Michigan will not excuse the arrest unless it is proposed to prosecute him in Michigan.

6. Night arrests and arrests on the eve of Sunday, or when it is hard to obtain the means for immediate deliverance, are oppressive and unjustifiable except in cases of pressing necessity. And the complaint before a magistrate should be made and supported by sworn testimony as speedily as possible.

7. The extradition between states of criminals who are said to be fugitives from other states is governed by the Constitution and laws of the United States; one state cannot deal with another without the approval of Congress, and its policemen have no greater power than the state to which they belong.

8. An arrest cannot be made in Michigan for purposes of extradition to another state without compliance with the laws of the United States.

9. Demand by the governor of one state upon that of another for extradition cannot be made until the offender has been indicted or otherwise complained of in the regular course of justice. U. S. Rev. Stat. § 5278. And in Michigan the complaint must be on oath and must bring the case within the provision of the law; the prisoner is also entitled to bail, and the complaining party must be answerable for costs and charges and his support. How. Stat. §§ 9623-6.

10. The marshal of Alpena arrested a man on Saturday evening on the strength of a letter purporting to come from the chief of police of Philadelphia, and signed with his name by some person whose initials only were attached. The letter stated nothing that would constitute a criminal offense in Michigan, but the marshal detained the prisoner as a matter of "official courtesy." *Held* that the arrest was illegal.

Error to Alpena.    (Emerick, J.)    April 17.—April 22.

TRESPASS.    Plaintiff brings error.    Reversed.

*Turnbull, Shields & Dafoe* for appellant.

*Clayberg & Sleator* for appellee.   A peace officer—like a
town marshal—can arrest without warrant : *Quinn v. Heisel*
40 Mich. 581; *Wade v. Chaffee* 8 R. I. 224; *Allor v. Wayne
County Auditors* 43 Mich. 81 ; *Bryan v. Bates* 15 Ill. 87 ;
and reasonable cause to believe a felony has been committed
justifies arrest : *Rohan v. Sawin* 5 Cush. 281 ; *Beckwith v.
Philby* 6 B. & C. 635 ; *Davis v. Russell* 5 Bing. 354; *Wakely
v. Hart* 6 Binn. 316 ; *Wade v. Chaffee* 8 R. I. 224; *Mitchell
v. Wall* 111 Mass. 497 ; Cooley on Torts 175 ; *People v. Gor-
don* 40 Mich. 716 ; *Sarah Way's Case* 41 Mich. 299 ; if prop-
erty has been feloniously stolen in another state and is
brought into Michigan by the thief, a felony is committed for
which the offender may be punished in Michigan : How.
Stat. § 9177 ; *Morissey v. People* 11 Mich. 327 ; *People v.
Williams* 24 Mich. 156.

CAMPBELL, J.   Plaintiff was arrested without process by
Gibbons, who was marshal of Alpena, on Saturday evening,
September 30, 1884, upon information received in a letter
from Philadelphia, the date of which is not given in the rec-
ord.   At 8 o'clock in the evening, Gibbons, who had pre-
viously learned that he was regularly employed at his trade
in the city, and knew the place, was watching at the post-
office to see whether he got his mail from box 64, which was
the box he was said to own.   At about 10 in the evening, as
plaintiff swears, Gibbons arrested him and took him to the
police station, where he was detained according to all the
testimony, until 11 o'clock, and then, by arrangement with
Scott, who was sheriff, he was sent to the county jail, and
kept there in the criminal cells till Monday morning.   His
employer, Mr. Lee, was sent for while he was in the police
station, and wanted to get him out on bail, and Scott told him
the bail would be about $10,000, and wanted to know if Lee
could stand that.   On his replying he was willing to bail
him for all he was worth, he was told the justice was away
and nothing could be done till Monday morning.   On Sun-
day, Lee and plaintiff's attorney were in the jail and told
Scott he had no right to hold plaintiff, and he replied he
knew it, but was only holding him out of courtesy for another
officer.   On Monday morning plaintiff's counsel went to the
jail with an application for habeas corpus against Scott to be

sworn to, and read it to plaintiff in Scott's presence.   After this Scott turned over plaintiff to Gibbons, who knew a writ of habeas corpus was to be applied for, and who took plaintiff back to the police station and held him there, and gave on the trial, as a reason why he did not take him before the justice, that he had this knowledge.   Scott swore the habeas corpus was not served on him till afternoon.   This writ became ineffectual by reason of the change of custody.   Another was sued out against Gibbons, and the proceeding before the circuit court commissioner was kept alive by adjournment, plaintiff meanwhile being kept in custody of Gibbons and not of the sheriff.   It does not appear that the prosecuting attorney intervened in that capacity officially, but Mr. Sleator swears he was employed as Mr. Gibbons' attorney to look after the matter before the commissioner.   On Sunday, Gibbons received a telegram from Mr. Girin, purporting to be chief of police at Philadelphia, telling him to hold Malcolmson, and he would send an officer and requisition at an early date.   On Tuesday, October 3d, the commissioner made an order to detain plaintiff in custody a reasonable time, to give time to the executive of Pennsylvania to demand him, unless ordered discharged by the police authorities of Pennsylvania. Gibbons swears that after receiving this order he got a telegram from Girin to discharge plaintiff, as the bonds were returned, and he did discharge him late in the afternoon of Tuesday.

The letter on which Gibbons first acted was one not purporting to be signed by Girin, but by one " J. H.," in his name, requesting the chief of police to arrest plaintiff, described as lately grand master of Israelite Lodge, A. A., of Philadelphia, and stated that he absconded, taking the funds of the lodge, consisting of money, and two bonds of Philadelphia and the United States, of $100 and $200.   This was all, except a personal description and means of identification of plaintiff.   It was not stated how long before the act referred to was done.   Plaintiff's testimony showed he committed no offense.

Upon the trial of the present case the circuit judge held

there was enough to make out reasonable cause for an arrest without warrant if the jury thought Gibbons acted honestly in that belief.     The judge also held that one defendant stood on the same footing with the other on this head, and that if Gibbons took plaintiff with a belief that he had committed the crime of larceny in Michigan, by bringing in stolen property from Pennsylvania, it was a good arrest.     Some other rulings require no separate reference beyond what will be covered by the considerations which we propose to mention.     It is proper to say, however, in this place, that the jury came in unable to agree, and the court gave some further instructions concerning the effect of habeas corpus proceedings to place the party under the control of the commissioner, and on being requested to charge that defendants were liable if they attempted to evade the writ, he said that question had all been gone over.

We have failed to find any instruction on that subject. The request was pertinent and important.     The case showed beyond dispute a shifting of custody from Scott to Gibbons, with knowledge in both that a writ was to be applied for, and that by reason of this, a second writ became necessary. The statute makes such a shifting of custody, with intent to elude the service of such a writ, or avoid its effect, a misdemeanor in every party aiding or assisting.     How. Stat. §§ 8596–8598.     It was error not to so charge.

We have looked carefully into the record without finding any reason why the court did not charge, as requested, that the only question in the case was as to the amount of damages.

The letter from Philadelphia, signed by an unknown person, was the only ground on which Gibbons had any excuse for acting.     It did not show that any prosecution had been commenced in Pennsylvania; nor when, if at all, plaintiff left with the bonds referred to ; nor whether, under the laws of Pennsylvania his act, if willfully wrong in any respect, was either larceny or embezzlement.     If the act had been done here, and no other facts were alleged than this letter shows, no crime would be charged, and if all were set out in

a warrant, the warrant would be void. *In re Leddy* 11 Mich. 197 is, if anything, a stronger case than this would be. Under our laws the company must be incorporated, and the person must have official charge of the funds before he can be guilty as an officer of embezzlement. How. Stat. § 9151. It is difficult to see how that would be reasonable cause without a warrant, which would not be under a warrant. An officer of justice is bound to know what the law is, and if the facts on which he proceeds, if true, would not justify action under the law, he is a wrong-doer. If, as in this case it is claimed, he was relying on a Pennsylvania larceny to justify him, he should at least be informed how far the laws of that state made it so. There is no presumption that such a law exists, and he showed no reason for thinking so, beyond the letter. But he had no reason to suppose the writer of that letter had any personal knowledge of the taking, whether lawful or unlawful. Such pure hearsay coming in a shape where there is no way to bring out precise information, or to lay before an examining magistrate any facts at all, cannot be allowed to justify infractions of personal liberty. The officer must have such facts to lay before the examining magistrate as would at least justify the justice in holding the accused for further examination. The law contemplates that the complaint shall be sustained speedily by sworn witnesses, and it would be contrary to all principle to permit anything else. A larceny in Europe or Asia would furnish as good a ground of procedure as one nearer by, and if such loose hearsay will authorize an arrest, innocent parties have no safety against malice. In our opinion, such indefinite and irresponsible information is in itself no authority at all, and an officer acting on it acts at his peril, and is no better off than any other citizen.

The habit, which is by a very singular abuse of language called official courtesy, of making illegal arrests in one jurisdiction in the hope that similar violations of law may be reciprocated, is one which cannot be tolerated. The law places private liberty at a much higher value than official favors; and violations of law by those who are appointed to

protect instead of destroy private security, deserve no favor. Fundamental rules of constitutional immunity cannot be relaxed.

But we find nothing in the record which justifies the setting up of any defense resting on the law of this State as to bringing in stolen property. An arrest cannot be made for one purpose and justified for another. It makes no difference whether defendants did or did not suppose the plaintiff had violated the laws of this State, unless they proposed to prosecute him here. Not only is no testimony given of any such purpose, but the contrary is fairly to be inferred from the testimony of all parties. Before the habeas corpus was talked of, Gibbons had telegraphed to Philadelphia, and on Sunday received answer that he was desired to hold plaintiff to await extradition. There is nothing to show that any attempt was made, either Saturday evening, or Sunday, or Monday morning, before the service of the habeas corpus, to enter a complaint before some one of the several magistrates provided for by law in the city of Alpena, although for such a purpose, from very obvious reasons of humanity, Sunday is made a legal day of application. How. Stat. § 7250. It is generally considered that proceedings to arrest without warrant should only be resorted to where there is some reason to think it necessary, and there was no such showing here; but, on the other hand, it seemed very improbable that a workman in steady employ, and in no way concealing himself, would suddenly change his mind and depart. The time and manner of arrest were such as to be cruel and oppressive, without some imperious necessity. The habit of making needless night arrests, and of doing so on the eve of Sunday, when the ordinary resources for immediate deliverance are not at hand, is without any decent support. We had occasion to comment somewhat on this subject in *Stensrud v. Delamater*, ante, p. 144. All of these facts tend clearly to show that the arrest was not made or supposed to be made in the exercise of any duty to the State of Michigan, for a violation of our laws; and, as already stated, while defendants under leading questions spoke of their belief that there was an offense

under our laws, they did not claim that the arrest was made for that purpose. The action of the circuit court commissioner is to the same purport. We are not judicially informed whether Mr. Sleator was prosecuting attorney at that time. If he was, he is not shown as appearing in that capacity, and it cannot be ,assumed or supposed that the commissioner acted on an issue not before him, and would have made an order on the basis that plaintiff was held for extradition, unless that was the cause set up in the return.

But inasmuch as the other issue is raised, it is necessary to refer to that briefly. The extradition of criminals who are claimed to be fugitives from other states is governed entirely by the Constitution and laws of the United States. No state can deal with other states, under the express terms of the Constitution, without the approval of Congress, and what the state cannot do its policemen cannot do. An arrest here without compliance with the United States laws cannot be maintained. Michigan cannot treat foreign offenses as domestic, and there is nothing in our statutes which contemplates an arrest without warrant, for purposes of extradition.

Under the Constitution and Acts of Congress it is for the governor of the one state to determine whether he desires extradition, and for the governor of the other to decide whether he will grant it. Congress will not allow the demand to be made until the offender has either been indicted or otherwise complained of in the regular course of justice. There can be no demand before complaint. Rev. Stat. U. S. § 5278. Our statute in aid of such proceedings only allows an arrest where a complaint is made on oath, setting forth such matters "as are necessary to bring the case within the provisions of law," and on a full showing the person may be recognized to appear again before the magistrate at some future day, "allowing a reasonable time to obtain the warrant of the governor," and in default of bail there may be a commitment. How. Stat. §§ 9623, 9624–9626. But the statute further requires that the complainant shall be liable for costs and

charges, and for the weekly support of the prisoner, and that the jailor may discharge him on default thereof.

The arrest, therefore, cannot be justified under this act, and the order of the commissioner was in clear violation of it, and could justify no further holding.

The views we have expressed leave it unnecessary to go into further details. The judgment must be reversed, with costs, and a new trial granted.

SHERWOOD and CHAMPLIN, JJ. concurred. COOLEY, C. J. did not sit in this case.