## HAMMITT v. STRALEY.

1. ARREST—PROBABLE CAUSE.
   Whether an officer has reasonable cause to believe person arrested committed a felony must depend upon the situation in the particular case.

2. FALSE IMPRISONMENT—DAMAGES—PEACE OFFICERS.
   Doubts should be resolved in favor of an honest discharge of duty by peace officers, if possible, and courts should not place such officers in fear of responding in damages for the lawful and proper discharge of that duty.

3. ARREST—WITHOUT WARRANT—PROBABLE CAUSE.
   Probable cause for an arrest for a felony without a warrant is a reasonable ground of suspicion supported by circumstances

REFERENCES FOR POINTS IN HEADNOTES
[1–6] 4 Am Jur, Arrest §§ 48, 50.
[5] 4 Am Jur, Arrest § 25.

sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty.

4. SAME—WITHOUT WARRANT—PROBABLE CAUSE.

Probable cause for an arrest for a felony without a warrant does not depend on the actual state of the case in point of fact, as it may turn out upon legal investigation, but on knowledge of facts and circumstances which would be sufficient to induce a reasonable belief in the truth of the accusation.

5. SAME—WITHOUT WARRANT—PROBABLE CAUSE.

A peace officer may arrest without warrant any person whom he suspects, on reasonable grounds, of having committed a felony.

6. SAME—WITHOUT WARRANT—PROBABLE CAUSE.

The facts necessary to uphold an arrest without a warrant must be sufficiently strong to support the issuance of a warrant for arrest.

7. SAME—WITHOUT WARRANT —PROBABLE CAUSE—QUESTION OF FACT.

It is for the jury to determine which way the evidence preponderates or what inferences should be drawn therefrom where the evidence, as to whether or not a peace officer had probable cause to believe that person arrested for a felony without a warrant, was conflicting and such that reasonable minds might differ as to the inference to be drawn; but where the facts are conceded or the evidence uncontradicted and susceptible of but 1 reasonable inference, issues as to probable cause are for the court.

8. FALSE IMPRISONMENT—PROBABLE CAUSE—DIRECTED VERDICT.

The trial court properly granted motion for directed verdict by defendant chief of police in action against him for illegal arrest and detention, where evidence was undisputed that complaint had been made by woman who claimed plaintiff had tried to run her down with an automobile in a threatening manner in such a way as to constitute a felonious assault or assault with intent to do great bodily harm, defendant's investigation showed plaintiff had a previous record of criminal conduct and arrest was made without a warrant, since defendant reasonably had probable cause to believe a felony had been committed.

9. JUDGMENT—RES JUDICATA—HABEAS CORPUS—FALSE IMPRISONMENT—DETERMINATION OF ISSUE OF PROBABLE CAUSE.

Release of plaintiff from custody by habeas corpus proceeding less than 14 hours after his arrest by defendant chief of police did not bar defense that he had reasonable cause to believe

that a felony had been committed and that plaintiff had committed it, in action for illegal arrest and detention, where it appears defendant was not permitted to have the matter of probable cause passed upon in the habeas corpus proceeding although it was a question which could have been raised and passed upon.

10. SAME—RES JUDICATA.

A judgment, to constitute a bar to a claim in a subsequent action, must be rendered upon the merits, upon the same matter in issue, and between the same parties or their privies.

Appeal from Oakland; Simpson (John), J., presiding. Submitted October 13, 1953. (Docket No. 77, Calendar No. 45,971.) Decided December 29, 1953.

Case by Gunery R. Hammitt against Herbert W. Straley, Pontiac chief of police, for false imprisonment on arrest without warrant. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*William John Beer* and *John B. Osgood,* for plaintiff.

*Glenn C. Gillespie* and *William A. Ewart,* for defendant.

BOYLES, J. In this case the plaintiff sued to recover damages for illegal arrest and imprisonment. At the close of the proofs, on trial by jury, the court granted a motion of the defendant for a directed verdict of no cause for action. From the judgment entered thereon, the plaintiff appeals. The principal question here is whether the arrest without a warrant was legal.

About 10:30 p.m., August 27, 1952, the defendant, chief of police of the city of Pontiac, arrested the plaintiff, without a warrant, on the oral complaint of one Mrs. Sidwell, and took him to the Oakland county

jail. There the plaintiff was booked on the charge of "investigation to assault with intent to do great bodily harm," and held overnight. The issue here is whether the officer in making the arrest without a warrant had reasonable cause to believe that a felony had been committed and that the plaintiff had committed it.

About 9:45 in said evening of August 27, 1952, the defendant chief of police received a telephone call from one Mrs. Sidwell, at his office in Pontiac, as to which he testified as follows:

"*Q.* * * * Tell the jury what Mrs. Sidwell said to you on the telephone that night.

"*A.* As I said when I finally succeeded in getting her collected in her mind, the first thing I can remember her telling me over the phone was that there was a man coming to the house to kill her and I said 'What man?' and she said 'A man I ride to work with.' I said, 'Who is this talking?' and she said, 'This is your neighbor.' As I said up to that day I was not acquainted with any of my neighbors. I said, 'What is your name?' and she said 'Mrs. Sidwell, you know, I live just a couple of houses from you' and I had to get her, I had to have her identify the house before I could place her, and I asked her, 'Well, now, you just tell me what the trouble is.' She said 'A man I ride to and from work with is threatening to come and drag me out of the house by the hair of the head and beat me within an inch of my life.' I said, 'Who is this man?' She said, 'Mr. Hammitt.' I said 'How long have you known him?' 'About a year and a half or so' and I said, 'Is he there now?' She said, 'No, he is not here now, but he just got through calling me up' and she said 'I am just scared to death.' I said 'You'd better lock the doors.' She said, 'I've got my doors locked.' I said, 'I will try to send an officer to your house.' I said, 'Just a minute, describe him to me.' She said, 'I don't know anything about him, I just ride back and forth to

work with him.' I said 'What caused him to make such a threat.' She said 'It all started about a week ago when he tried to run me down with his car.' I said, 'Why did he try to do that?' She said, 'Because I refused to ride with him any more.' I said, 'Why?' and she said 'Because he started making advances towards me and abusing me with his conversation and I just couldn't stand it any more. I wouldn't let my husband talk to me that way and I certainly won't let him.' I said, 'How long has this gone on?' She said, 'Just since I stopped riding with him. I just don't want to have anything to do with him. I've tried to avoid him. I meet him on the street and he hollers or orders me to get in the car, or he is going to get me.' 'What specific instance, what specific times has he done this?' and she said 'Just last week when he tried to run me down with a car.' I had her describe that to me as best she could and her voice sort of faded away. I said, 'Hello, are you still there?' Then she was just whispering. I said, 'What is the matter, can't you talk?' She gave me to understand she couldn't very well. I said, 'Are you so frightened you can't talk?' She said, 'Yes.' I couldn't understand her conversation, her voice at that time was just so distant that I told her, I said, 'All right, I'll try to have an officer out to the house as soon as possible. You keep your doors locked and if there is anything we can do we certainly will,' having obtained a description of the man from her.

"*Q.* Just a second, please, sir. Is that the conversation which you had on the telephone?

"*A.* Partially.

"*Q.* Well, is that all of it?

"*A.* Not quite all.

"*Q.* Then will you tell us the rest of it?

"*A.* I obtained a description of the man from her, what kind of a car he was driving and I tried to learn the license number of the car from her, and she didn't remember the number. She said it was a green '50 Buick sedan. * * * I learned his address, she said

it was Fairgrove, she didn't know the number, so that is about the substance of the initial conversation.

"*Q.* You made a memorandum of it, I think you say that is annexed there?

"*A.* Yes, that plus the personal conversation I had with her some 15 or 20 minutes later.  *  *  *

"*A.*  *  *  *  After the telephone conversation was concluded, I contacted the sergeant on duty, asked what detectives were working that evening, he told me Detective DePau, I found Detective DePau in the detective office and asked where his partner was, he said he was working alone. I told him about the complaint I received from Mrs. Sidwell, a hysterical woman in fear of her life. I said 'She has made a complaint now, but,' I said, 'I couldn't get it as clear as we should get it over the phone.' So, I said, 'You are going to have to go out to the house and talk to her,' and I said, 'Do you know anything about this man?' He said, 'No, I don't.' I said, 'All right, let's check the identification bureau to see if there is a record against him there.' We did check the identification bureau, found the record.* After finding the record I said, 'If you are working alone like this, I can't let you go alone. We don't know what kind of a character he is. I can't let you go alone.' Then we went out to Mrs. Sidwell's house."

The defendant then testified further as to what Mrs. Sidwell told him at her home. In substance, he said it was the same as she had told him over the telephone, amplified as to what she had told him had occurred when Hammitt tried to run over her with his car. She said that she had waited 15 or 20 minutes past her quitting time from work and had left by a rear entrance,

---

* At the trial plaintiff admitted to 13 arrests in Pontiac, for larceny, disorderly conduct, drunk and disorderly, assault and battery, driving an automobile under the influence of liquor, felonious assault, nonpayment of alimony, et cetera.

"so that he would not be around, but as she was walking on the sidewalk she was nearly run over by Hammitt. She stated Hammitt must have waited for her to come out of the building, he drove his car along the roadway as she was walking along the sidewalk, he called her, to her, and when she didn't look up or answer him, he cursed her and called her vile names and then threatened to get her. She became very frightened and hurried her walk and suddenly heard the motor of the Hammitt car speed up and race, and the sound coming close to her. She glanced up and saw Hammitt's car come over the roadway directly where she was walking, he jumped out of his car and was walking up towards her, calling her vile names and threatening to kill her if she didn't get in the car with him. Mrs. Sidwell states (d) she ran across the curbway and roadway, stumbling over piles of dirt in the roadway, fearing he would catch up with her, she continued running across the fields. She fell down and injured her knee, but thinking Hammitt might still chase her, she continued running on, narrowly escaping being struck. She ran between the houses and to her house on Liberty street. * * * That is the sum and substance of the conversation that took place in the home and on the telephone."

The defendant's testimony was undisputed, and was corroborated by the testimony of Mrs. Sidwell. Under the circumstances, did the officer have reasonable cause to believe that a felony had been committed and that Hammitt had committed it? If so, the arrest without a warrant was legal. CL 1948, § 764.-15(d) (Stat Ann § 28.874[d]).

"Whether an officer has reasonable cause to believe the person arrested committed a felony must depend upon the situation in the particular case." *People* v. *Orlando,* 305 Mich 686, 689.

"If possible, any doubt should be resolved in favor of an honest discharge of duty by peace officers, and

the courts should not place them in fear of responding in damages for the lawful and proper discharge of that duty." *Odinetz* v. *Budds,* 315 Mich 512, 518.

" 'Probable cause for an arrest has been defined to be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. Yet probable cause does not depend on the actual state of the case in point of fact, as it may turn out upon legal investigation, but on knowledge of facts and circumstances which would be sufficient to induce a reasonable belief in the truth of the accusation.'

"While stated by courts and textbook writers in different language, the test, as was said in *People* v. *Wilson,* 55 Mich 506, seems to be : Were there 'any facts which would induce any fair-minded man of average intelligence and judgment to believe' that defendant had committed a felony? Tiffany on Criminal Law (How 4th ed), p 92, thus puts it:

" 'Any constable or sheriff may arrest any person whom he suspects, on reasonable grounds, of having committed a felony.' * * *

"While the rights of individuals to be protected from unwarranted arrests must be carefully guarded, the rights of the public must also be considered. Robberies and holdups are now so frequent, and the opportunity to get away quickly so covenient, that unless officers may act promptly on information apparently reliable and circumstances reasonably convincing, there is but little hope of apprehending the guilty parties. If the officer must delay to ascertain that the information received comes from a responsible person, in many cases the opportunity to arrest will have passed. That officers do make arrests on such information, and that they are complimented on their promptness in doing so, is a matter of common knowledge." *People* v. *Ward,* 226 Mich 45.

In *United States* v. *Horton,* 86 F Supp 92, in a case from the United States district court for the

western district of Michigan, southern division, Judge Starr, in an exhaustive opinion, discussed at length the facts in a case where the defendants were charged with unlawfully transporting narcotics into Michigan, reviewed the laws of this State applicable to an arrest for a felony without a warrant, and said (96, 97):

"The court will consider first the legality of the arrest without warrant of defendant Horton. In the absence of an applicable Federal statute, the validity of an arrest without warrant is determined by the law of the State where the arrest takes place. * * *

"In *People* v. *Licavoli*, 245 Mich 202, the Court said: 'The rule is pretty well settled that if an officer believes, and has good reason to believe, that one has committed a felony, or is committing a felony in his presence, he has probable cause, as the term is used, and may arrest without a warrant.' See, also, *People* v. *Orlando,* 305 Mich 686. * * *

" ' "Probable cause" has been defined by this court as "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged." ' *Stacey* v. *Emery,* 97 US 642, 645 (24 L ed 1035).

" ' "In determining what is probable cause, we are not called upon to determine whether the offense charged has in fact been committed. We are concerned only with the question whether the affiant had reasonable grounds at the time of his affidavit and the issuance of the warrant for the belief that the law was being violated on the premises to be searched, and if the apparent facts set out in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a warrant." '
* * *

" 'The facts necessary to uphold an arrest without a warrant must be sufficiently strong to support the issuance of a warrant for arrest.'  *  *  *

"Therefore, the legality of the arrest of defendant Horton depends upon whether or not the facts in the possession of the arresting officers at the time of his arrest were sufficient to warrant a man of reasonable prudence and caution in the belief that defendant Horton had committed a felony."

In *Leisure* v. *Hicks,* 336 Mich 148, decided March 10, 1953, this Court said (152–155) :

"It is the position of the defendant and appellant that, there being no real dispute as to the facts, it was error to submit to the jury the question of whether defendant had probable cause to believe that plaintiff had committed a felony.  He contends that the issue should have been determined by the court as a matter of law.

"This problem has been before this Court frequently as evidenced by the long list of precedents referred to in both the appellant's and appellee's briefs, and in some instances we have said that where the facts are undisputed, the question of probable cause is one of law, for the court.  *Schneider* v. *Shepherd,* 192 Mich 82 (LRA 1916F, 399).  *  *  *

"While fundamental rules of constitutional immunity cannot be relaxed and private liberty must at all times be protected (*Malcolmson* v. *Scott,* 56 Mich 459), nevertheless the orderly and efficient enforcement of the law in the protection of our society requires the prompt arrest and detention of those persons honestly and reasonably believed to be guilty of crime.  Delay in arrest may endanger the public by permitting a felon to remain at large.  It may also permit his escape.  No exact and safe yardstick can be established.  Facts which might constitute probable cause justifying an arrest in one situation might not justify an arrest in the opinion of a reasonably prudent person under other circumstances, and we therefore feel that the better interpretation of

the rule applicable in these cases, and one which we believe to be consistent with precedents of this Court, appears in 10 Callaghan's Michigan Pleading and Practice, § 73.15, wherein it is said:

" 'As to all points respecting which the evidence is conflicting or reasonable minds might differ as to the inference to be drawn, it is for the jury to determine which way the evidence preponderates or what inferences should be drawn therefrom.   *   *   * The facts being conceded or the evidence being uncontradicted and susceptible of only 1 reasonable inference, issues as to probable cause are for the court.'   *   *   *

"These undisputed facts are susceptible to only 1 reasonable inference; namely, that the defendant acted as a reasonably prudent person in believing that the plaintiff was guilty of the commission of a felony and that under the circumstances the arrest was justified. It was therefore the responsibility of the trial judge to instruct the jury that the arrest was legal."

See, also, *Oxford* v. *Berry,* 204 Mich 197; *People* v. *Guertins,* 224 Mich 8; *State, ex rel. Wayne Prosecuting Attorney,* v. *Martin,* 314 Mich 317; *People* v. *Bommarito,* 309 Mich 139; *People* v. *Licavoli,* 245 Mich 202; *People* v. *Ormsby,* 310 Mich 291.

In the instant case, the facts and circumstances as to the information received by Straley preceding the arrest are undisputed. The trial court, in directing the jury to return a verdict of no cause for action, said:

"Jurors, in your absence, a motion has been made on behalf of the defendant for a directed verdict of no cause of action. They claim that in this case the defendant, Mr. Straley, was justified in making the arrest, that he had reasonable grounds to believe that a felony had been committed, that is, a felonious assault, or assault with intent to do great bodily harm, which under the laws of the State of Michigan,

is a felony, and they claim that under all of the testimony in this case, taken in the light most favorable to the plaintiff, that there is no testimony which the court should allow the case to go to the jury on.

"They claim that on this night in question Mr. Straley had this telephone conversation with this lady, that he investigated the plaintiff's record, and he then went to the home of Mrs. Sidwell, there he talked with her, found out what had occurred, and that this plaintiff had tried to run her down a few days ago with an automobile, in a threatening manner, and had she not run to get away from him, she might have been seriously injured or probably killed, so they claim that that constitutes a felonious assault, or assault with intent to do great bodily harm, a felony under the statutes of the State of Michigan. That, therefore, the chief of police was, had probable cause to arrest the plaintiff in this cause.

"In view of the testimony the court will sustain their holding and beliefs that Mr. Straley had probable cause to arrest Mr. Hammitt at that time. * * * Therefore, under all the circumstances the court will grant the motion of no cause of action."

The trial court properly applied the law to the undisputed facts in the instant case, and did not err in directing a verdict for the defendant.

Plaintiff also claims for reversal that an order made by the circuit court in a habeas corpus proceeding on August 28th, the day following his arrest, releasing him from custody, is *res judicata,* holding that the arrest was illegal.

Plaintiff was arrested by the defendant about 10:30 p.m. on the night of August 27th and taken to the county jail. At about 5 minutes before 12 o'clock, noon, on the next day, August 28th, defendant Straley was served with a writ of habeas corpus issued out of the circuit court for Oakland county, directing him to have Gunery Hammitt in that court at 12 o'clock. Defendant went at once to the court where

he saw Hammitt, who had been brought to court by someone from the county jail. The judge at once began to hear counsel for Hammitt, and to take the testimony of Hammitt, sworn as a witness. His testimony was brief, mostly to the point that he had been arrested without a warrant. Chief Straley was not afforded any time or any opportunity to file an answer or return to the writ, and none was filed.[1] The statute provides that the officer shall file a return, state the cause of the restraint, and that a hearing be held as to the legality of the arrest and detention.[2] Straley was not given an opportunity to testify as to the circumstances, to show that the arrest without a warrant was legal. No hearing was held on the crucial question whether the officer had reasonable cause to believe that a felony had been committed and that Hammitt had committed it, whereby the arrest without a warrant would be legal.[3] Although the time during which Hammitt might be legally detained had not expired (CL 1948, § 637.28 [Stat Ann § 27.2271] [See, also, CL 1948, § 764.13 (Stat Ann § 28.872); *Mooradian* v. *Davis*, 302 Mich 484]), the judge, after 10 or 15 minutes, announced that the prisoner was discharged and left the courtroom. Thereupon Hammitt also left, with his counsel. Straley's request to the prosecuting attorney, who appeared in behalf of the people, that he would "like to have an opportunity to tell the court my side of this, why I arrested the man" was met with the answer "No, never mind," and that the court had decided the matter.

While the question here could have been raised and passed upon in the habeas corpus proceeding, Straley was not afforded an opportunity to raise it. There was no hearing intended by the statute, to as-

---

[1] See CL 1948, § 637.18 *et seq.* (Stat Ann § 27.2261 *et seq.*).
[2] CL 1948, § 637.26 (Stat Ann § 27.2269).
[3] CL 1948 § 764.15(d) (Stat Ann § 28.874[d]).

certain whether the arrest without a warrant was justified by the information which had been received by the officer before the arrest. Under the circumstances, the release of Hammitt was not a bar to Straley's defense in the instant case, that in making the arrest he had reasonable cause to believe that a felony had been committed, and that Hammitt had committed it.

"We are not in accord with the claim of defendants that since the judgment of the circuit court at law was legal and valid, a court of chancery was without jurisdiction to dispose of the issues involved.

"In *Tucker* v. *Rohrback,* 13 Mich 73, we said:

" 'That a judgment, to constitute a bar to a claim in a subsequent action, must be rendered upon the merits, upon the same matter in issue, and between the same parties or their privies, is unquestionable.'

"See, also, *Reid* v. *Gooden,* 282 Mich 495; *Le Roy* v. *Collins,* 165 Mich 380; *MacKenzie* v. *Union Guardian Trust Co.,* 262 Mich 563." *Zak* v. *Gray,* 324 Mich 522, 525.

Affirmed.

Dethmers, C. J., and Adams, Butzel, Carr, Bushnell, Sharpe, and Reid, JJ., concurred.