## PEOPLE v DOUGLAS

1. CRIMINAL LAW—CONFESSION—VOLUNTARINESS—APPELLATE REVIEW.

Reviewing courts, in determining whether a defendant's confession was voluntary, are concerned with the correctness of the trial court's determination and are required to examine the entire record and make an independent determination of the ultimate issue of voluntariness.

2. CRIMINAL LAW—FINDINGS OF FACT—APPELLATE REVIEW—REVERSAL.

Reversal of a trial court's findings of fact that a confession was voluntary may occur where such findings are clearly erroneous; findings are clearly erroneous when, although there is evidence to support them, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

3. SEARCHES AND SEIZURES—CONSENT.

The obtaining of a search warrant may be waived by an individual and he may give his consent to a search and seizure, but, such waiver or consent must be proved by clear and positive testimony and there must be no duress or coercion, actual or implied, and the prosecutor must show a consent that is unequivocal and specific; therefore, where the prosecution failed to show that the occupant of the defendant's apartment consented to a search, the hacksaw discovered in the course of the search was clearly the product of an illegal search and seizure and inadmissible at the trial.

4. SEARCHES AND SEIZURES—CONSENT—JOINT OCCUPANT.

A joint occupant of an apartment may not consent to the search of another occupant's private room; therefore, even if the

REFERENCES FOR POINTS IN HEADNOTES

[1, 6, 8] 21 Am Jur 2d, Criminal Law § 368.
[2] 5 Am Jur 2d, Appeal and Error §§ 948–958.
[3] 68 Am Jur 2d, Searches and Seizures §§ 49–53.
[4, 5] 68 Am Jur 2d, Searches and Seizures § 52.
[7] 5 Am Jur 2d, Appeal and Error § 545.

prosecution had proven that the joint occupant gave her consent to search the defendant's apartment, the search of the defendant's bedroom and seizure of a hacksaw from the top of defendant's bed was illegal and the hacksaw was inadmissible at the defendant's trial.

5. SEARCHES AND SEIZURES—CONSENT—LANDLORD.

Consent to search does not permit the search of other areas not particularly specified; therefore, where a landlord's consent to search was restricted to an upstairs vacant apartment and attic and the police searched an upstairs rear porch and seized a shotgun barrel and shells from the porch's wall, the police exceeded the limits specified in the consent, and since the search and seizure was illegal, the products of the search were inadmissible at the defendant's trial.

6. CRIMINAL LAW—CONFESSION—VOLUNTARINESS—ILLEGAL SEARCH—PHYSICAL FORCE.

A confession is not voluntarily given by a defendant where the record reveals the use of physical force by the police to promote the confession, and where the defendant's confession was encouraged by confronting him with the products of an illegal search and seizure which undoubtedly had a coercive influence on his decision to confess.

7. CRIMINAL LAW—APPEAL AND ERROR—EVIDENCE—ILLEGALLY OBTAINED EVIDENCE—ADMISSIBILITY.

Where a defendant raises a constitutional question concerning the admission of evidence for the first time on appeal, two questions must be asked: (1) was the evidence decisive; and (2) was the evidence erroneously admitted into evidence.

8. CRIMINAL LAW—CONFESSION—VOLUNTARINESS.

At a required evidentiary hearing into the voluntariness of a confession the trial judge must confine his consideration to the narrow issue of the voluntariness; consideration of the defendant's actual guilt is improper.

Appeal from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 October 2, 1973, at Detroit. (Docket No. 14420.) Decided November 1, 1973. Leave to appeal applied for.

Herbert Douglas was convicted of first-degree murder. Defendant's application for delayed ap-

peal denied without prejudice, and remanded to trial court for a hearing on the voluntariness of a confession. The trial court determined the confession to be voluntary. Defendant appeals by leave granted. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*Chester Kasiborski,* for defendant.

Before: DANHOF, P. J., and FITZGERALD and WALSH,* JJ.

FITZGERALD, J. Defendant appeals by leave granted from a 1963 jury conviction of first-degree murder,[1] for which he was sentenced to life imprisonment, and from the trial court's finding that defendant's confession, obtained during a *Walker*[2] hearing, was voluntary.

An armed robbery of a party store in Detroit on February 1, 1963, resulted in the shooting death of its two proprietors by an assailant armed with a sawed-off shotgun. On February 5, defendant was arrested on an unrelated charge of armed robbery.[3] Unable to post $10,000 bail for that offense, he was returned to the Wayne County jail. On February 15, defendant was arraigned for the murder of the party-store proprietors. From February 6 to February 15, defendant was interrogated

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCLA 750.316; MSA 28.548.

[2] *People v Walker,* 374 Mich 331; 132 NW2d 87 (1965).

[3] MCLA 750.529; MSA 28.797.

regarding the murders. During this time, defendant was placed in several lineups, but was not identified as to any complicity in the shooting deaths.

While defendant was in custody for the unrelated robbery charge, detectives William Chubb and Andrew Lovechuk searched defendant's apartment. No attempt was made to obtain a search warrant, and permission to search the premises was neither sought nor given. The fruits of the search included a sawed-off shotgun barrel, shotgun shells, and a hacksaw. On February 13, while still in custody on the armed robbery charge and prior to his arraignment on the first-degree murder charge, defendant was confronted with the results of the search. He stated, "Well, I suppose if you have that much, I'll take you down and show you where the shotgun is". After locating the shotgun and returning to police headquarters, defendant orally confessed to shooting both proprietors of the party store.

At trial, the shotgun, shotgun barrel, shells, hacksaw, and the confession were admitted into evidence. The question as to the voluntariness of the confession was submitted to the jury. Testimony was obtained from another suspect in the identical murder case, indicating that defendant was subjected to physical abuse prior to the confession. In addition, another inmate testified that defendant's face was swollen and footmarks were observed on the back of his coat. Defendant himself testified that he was knocked down while wearing handcuffs, kicked in the eye, and was struck on the knee by the barrel of a gun. He further testified that on the day following the alleged beating he was taken to the prison medical facility for examination and later to the Detroit

Receiving Hospital for treatment of a bruised eye and cut lip.

On November 7, 1963, defendant was convicted by a jury of first-degree murder. Counsel was appointed but efforts to obtain the trial transcript were not successful until 1967. Defendant's application for delayed appeal was filed early in 1968, and on August 20, 1968, this Court denied defendant's application for delayed appeal without prejudice, remanding the cause to the trial court for a *Walker* hearing to determine the voluntariness of defendant's confession. At the hearing, the trial judge determined that defendant's confession of February 13, 1963, was voluntary. This appeal followed.

We are asked to decide whether the trial court erred in determining that defendant's confession was voluntary. Reviewing courts are concerned with the correctness of the trial court's determination and are required to examine the entire record and make an independent determination of the ultimate issue of voluntariness. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972); *People v Summers,* 15 Mich App 346; 166 NW2d 672 (1968). Reversal of the trial court's finding of fact may occur where such findings are clearly erroneous.

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v United States Gypsum Co,* 333 US 364, 395; 68 S Ct 525, 542; 92 L Ed 746, 766 (1948); 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 597.

The confession admitted into evidence was given orally while defendant was in custody between the hours of 10:30 p.m. and midnight on the evening of

February 13, 1963. Officer Lovechuk testified as follows:

"I asked him if he was in this store and pulled this robbery. I had explained to him prior to that—I had explained to him that this gun was the gun that fired the shell that was found in front of this confectionery store. He said he did go in. He said he held the place up. He was holding up the smaller man, made him empty his pockets, and the bigger man made a lunge at him and he shot him, and the other man ran around the counter and he followed him. And as the man got into the bathroom, he stuck the shotgun up to the back of his head and pulled the trigger. And I wanted to get into details, very fine details with him on it, and he wouldn't go into detail. He said, 'I shot him, so I shot him'. He said, 'So what else do you want?' I asked him if he would be willing to go before a prosecutor and make a formal statement on this robbery and murder. He said he would if in our statement we would put that we would only charge him with manslaughter, promise to charge him with manslaughter."

Review of the testimony obtained at the *Walker* hearing, together with the circumstances preceding the confession, convinces us that the trial court erred in determining that defendant's confession was given voluntarily. Evidence of physical force, the coercive nature of the defendant being confronted with illegally seized evidence, and reliance by the trial court upon matters other than those concerning the voluntariness of defendant's confession at the *Walker* hearing lead us to this conclusion.

Interrogation of defendant commenced between 1 and 3 o'clock in the afternoon of February 13, 1963. At least five officers participated in this session, the actual duration of which cannot be determined from the record. Defendant was then removed to the 9th floor of Detroit Police Head-

quarters at approximately 7 o'clock in the evening for further interrogation. Between 9 and 10 o'clock, defendant was taken by four police officers to uncover the shotgun hidden in a snow bank. Interrogation resumed upon their return to headquarters, and defendant confessed at approximately 10:30. He was returned to jail at midnight.

Taking the testimony most favorable to the prosecution, defendant was interrogated for at least four hours prior to the confession and was subject to possible interrogation for nine hours. During this time five officers questioned the defendant at length. Just prior to his confession, the defendant unexplainably collapsed. James Tomlinson, also suspected of committing the identical murders, heard "hollering" sounds from an adjacent room as though someone were being beaten. Upon entering the interrogation room, Tomlinson testified, he saw the defendant, his face swollen, lying on the floor. Defendant himself testified that he was physically beaten. The following day, defendant was taken to the Detroit Receiving Hospital and treated for a bruised and swollen eye and cut lip. A medical aid at Wayne County jail testified that defendant had a contusion on his left ankle and complained of eye discomfort as a result of an injury or blow suffered.

Prior to his confession, defendant was confronted with the shotgun barrel, shells, and hacksaw obtained from his apartment in a warrantless search conducted by the police. The hacksaw was found on defendant's bed, while the barrel and shells were discovered inside a hole in the back porch wall. The owner of the apartment lived on the first floor and gave the officers permission to search a vacant upstairs apartment. After a fruitless search, the officers knocked upon defendant's

door and a girl answered. They entered, asked the location of defendant's room, and discovered a hacksaw on his bed. The hacksaw was clearly the product of an illegal search and seizure and was therefore inadmissible at trial. The prosecution failed to show that the occupant of defendant's apartment consented to the search. Consent must be proved by clear and positive testimony and must be shown to have been made without duress or coercion, actual or implied. *People v Kaigler,* 368 Mich 281; 118 NW2d 406 (1962). Further, a joint occupant of an apartment may not consent to a search of another occupant's private room. *People v Flowers,* 23 Mich App 523; 179 NW2d 56 (1970).

The shotgun barrel and shells were discovered in a wall of the upstairs rear porch, a common area accessible to all residents. However, the consent to search given by the landlord was restricted to the upstairs vacant apartment and the attic. Consent to search does not permit the search of other areas not particularly specified.

"It is elementary that the obtaining of a search warrant may be waived by an individual and he may give his consent to search and seizure; but such waiver or consent must be proved by clear and positive testimony *and there must be no duress or coercion, actual or implied, and the prosecutor must show a consent that is unequivocal and specific * * * ." People v Kaigler, supra,* at 294; 118 NW2d 413. (Emphasis in original.)

In the instant case, the police officers exceeded the limits specified in the consent granted them by conducting a search of the upstairs rear porch.

The use of the illegally seized evidence undoubtedly had a coercive influence on defendant's decision to confess and consequently it must be consid-

ered involuntarily made. Further, the shotgun, barrel, shells, hacksaw, and the confession itself should have been ruled inadmissible. However, since no objection was made at trial, the standard of review set forth in *People v Bukoski,* 41 Mich App 498, 501; 200 NW2d 373, 375 (1972), is applicable:

"Where a defendant raises a constitutional question for the first time on appeal, we must ask two questions: (1) was the evidence decisive, and (2) was the evidence erroneously admitted into evidence. *People v Gunn,* 34 Mich App 106; 190 NW2d 793 (1971)."

The evidence sought to be excluded was decisive. The police firearms and ballistics expert connected the gun, the sawed-off barrel, the hacksaw, and the shells with each other and with a shotgun cartridge and shell wadding found at the scene of the crime. The prosecution cites no authority yet contends the searches were conducted with consent. Our review of the record discloses that consent from the occupant of defendant's apartment was wholly lacking. The consent given by the landlord was limited to two specific areas, neither of which was the location of the discovered evidence.

Finally, our review of the lower court opinion clearly indicates that the trial judge did not confine his consideration to the narrow issue of the voluntariness of the defendant's alleged confession at the *Walker* hearing. His concern centered upon defendant's actual guilt rather than the voluntariness of the confession. Taking the evidence adduced at the *Walker* hearing alone, it is our independent judgment that defendant's confession was not given voluntarily.

It was reversible error to admit defendant's involuntary confession at trial. *People v Summers,*

supra. Review of the *Walker* hearing evinces a firm conviction that defendant's confession was given involuntarily and a new trial should be granted. None of the evidence illegally obtained should be admitted.

Reversed and remanded for a new trial.

All concurred.