## PEOPLE v LANGSTON

1. ARREST—CRIMINAL LAW—ARREST WITHOUT WARRANT—PROBABLE
   CAUSE—SEARCHES AND SEIZURES.

   The reasonable or probable cause required to support an arrest
   without a warrant stems from some fact, circumstance, or
   information which creates an honest belief in the mind of a
   reasonable prudent man that the person arrested has commit-
   ted a felony; and an arrest will not be held valid where it is
   made upon a vague and general belief in the guilt of the
   accused or where it is made as a subterfuge for a search and
   seizure.

2. ARREST—CRIMINAL LAW—ARREST WITHOUT WARRANT—PROBABLE
   CAUSE.

   Information acquired after an arrest without a warrant is made
   can have no bearing upon the probable cause required to make
   the arrest; and the prosecution has the burden of establishing
   that an arrest without a warrant is supported by probable
   cause prior to the arrest which meets a standard at least as
   stringent as that applied when an arrest warrant is sought.

3. ARREST—CRIMINAL LAW—ARREST WITHOUT WARRANT—PRIOR CON-
   VICTION—PROBABLE CAUSE.

   The similarity of behavior patterns exhibited by one who engages
   in criminal activity may be of significant value in criminal
   identification, but it alone has not been held to provide suffi-
   cient probable cause for an arrest without a warrant; and while
   a prior record of similar criminal conduct can contribute to a
   finding of probable cause, even a prior conviction for a similar
   crime is not enough, in and of itself, to provide probable cause
   to arrest without a warrant.

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 5 Am Jur 2d, Arrest §§ 26, 28.
[1] Lawfulness of nonconsensual search and seizure without warrant,
   prior to arrest. 89 ALR2d 715.
[5] 21 Am Jur 2d, Criminal Law §§ 440, 441.
[6] 29 Am Jur 2d, Evidence § 573.

4. ARREST—CRIMINAL LAW—PROBABLE CAUSE—DISCRETION.

A ruling by the trial court that an officer lacked probable cause to arrest a suspect is discretionary and will not be reversed unless an abuse of discretion is shown.

5. CRIMINAL LAW—CONFESSION—WALKER HEARING—VOLUNTARINESS —APPEAL AND ERROR.

The inquiry at a *Walker* hearing must be confined to the narrow issue of the voluntariness of the confession, without regard to the guilt or innocence of the accused; and the lower court's findings will be reversed as erroneous only when the reviewing court, upon examination of the entire record, is left with a definite and firm conviction that a mistake was committed.

6. CRIMINAL LAW—CONFESSION—EVIDENCE—VOLUNTARINESS—INTEL-LIGENCE OF ACCUSED.

The voluntariness of a confession resulting from an interrogation will be vitiated where there is evidence that the suspect was of subnormal intelligence and was lacking in understanding of the circumstances surrounding the interrogation at the time that the *Miranda* warnings were given.

Appeal from Recorder's Court of Detroit, Justin C. Ravitz, J. Submitted Division 1 October 11, 1974, at Detroit. (Docket No. 17201.) Decided January 27, 1975.

Erskine Langston was charged with first-degree murder. Motion to suppress a confession and certain physical evidence granted. The people appeal. Affirmed in part reversed in part and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Division, and *Patricia J. Boyle,* Assistant Prosecuting Attorney, for the people.

*Neal Bush,* for defendant on appeal.

Before: DANHOF, P. J., and BRONSON and O'HARA,* JJ.

DANHOF, P. J. Defendant was charged with first degree murder, MCLA 750.316; MSA 28.548. Prior to trial, defendant moved to suppress both a confession and certain physical evidence obtained from him by the police following his arrest. An evidentiary hearing on these motions was held, and findings were made. An order was entered suppressing the confession and the other physical evidence, and quashing the information. Upon leave granted, the people appeal these findings and order. We affirm in part and remand.

On October 5, 1972, Mary Fotion, a 69-year-old woman who lived alone, was found murdered in the kitchen of her home. She died of multiple stab wounds to the chest and abdomen. A nylon stocking was tied around her neck, and her feet were bound with an electric wire. Blood was found in various rooms of the house. The victim's dress had been pulled above her knees, but there was no evidence of rape.

On October 6, 1972, the defendant, Erskine Langston, was arrested without a warrant by members of the homicide section of the Detroit Police Department. Detective Roffey of the homicide section testified at the evidentiary hearing that he had been assigned to the Fotion murder investigation at about 8 a.m. on the day of the defendant's arrest. Accompanying the file was a note from a superior officer indicating that there existed some similarities between the Fotion murder and the murder of Marion George in 1967.

Sergeant Roffey compared information from the

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

file on the George murder to the information he had concerning the Fotion murder. He testified that he detected a number of common factors: both victims were elderly white women; both lived alone; both were found with something tied around their necks; both were bound and stabbed; both were found with their dresses pulled above their knees; and blood was found in several rooms indicating a struggle in both cases. In addition, in neither case was there any evidence of forced entry or of rape, nor were the homes ransacked, although robbery apparently occurred in both instances. The defendant's father lived within one-half mile of both murder scenes.

The defendant had been arrested and charged with the George murder in 1967. He was committed to the custody of the Department of Mental Health until May 1970 at which time a sanity hearing was held. Reports from various authorities indicated that defendant suffered a "mild mental deficiency"; his intelligence quotient was listed at 60; and he could neither read nor write. He was found competent to stand trial, but the charges against him in connection with the George murder were dismissed on motion of the prosecution because of insufficient evidence.

Detective Roffey investigated further and discovered that defendant Langston had been in the area at approximately the time that Mrs. Fotion was murdered. He decided not to seek a warrant, but rather he and members of the homicide section went to the Langston house to arrest the defendant. They encountered him on the sidewalk near his father's house and they arrested him for the murder of Mrs. Fotion.

Accompanied by his brother, James, defendant was taken to the homicide bureau at about 5 p.m.

on Friday, October 6, 1972. His clothing was seized, and subsequent tests revealed that blood found on his jacket was the same type as that of the murder victim. Defendant asked that his father be present, and his father was brought to the police station where he remained until about 8:30 p.m. At that time the interrogation was suspended because the defendant indicated he was tired and that "he would tell us about the crime in the morning".

Questioning continued at 10:30 a.m. Saturday, October 7. Sergeant Roffey again read the defendant his *Miranda*[1] rights. Although he believed that the defendant was "retarded", and he knew that the defendant had been committed to the Wayne County Training School for seven and one-half years, and that he spent over three years in the Wayne County Jail and in the Ionia State Hospital in connection with the George murder, Sergeant Roffey made no attempt to elaborate or explain these rights. He candidly conceded at the hearing that the defendant did not completely comprehend what was happening and that "there were many things that I don't believe he understood". At about 1:30 p.m., defendant made a statement in which he confessed to the murder of Mrs. Fotion. (This statement was tape recorded, but the recording was of such poor quality that it was virtually unintelligible and it was not accepted as evidence at the evidentiary hearing. Hence, the tape recording has not been considered by this Court.)

At approximately 4:15 p.m., Sergeant Roffey read a typed statement based on the confession to the defendant because he knew that the defendant

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

could not read it for himself. In response to the officer's request, the defendant signed the statement. A warrant was issued and arraignment was held on Monday, October 9, 1972. A preliminary examination was held on October 19, 1972 and defendant was bound over for trial on the charge of first-degree murder.

Prior to trial, a combined hearing on the motions to suppress the confession and the jacket was held. The trial court ruled that the prosecution had not satisfied its burden of proving that the statement was voluntary, and that the defendant did not understand his *Miranda* rights. Also, the Court ruled that the confession was a result of an unlawful arrest and detention designed to obtain evidence from the defendant rather than to bring him promptly before a magistrate. The motion to suppress the blood-stained jacket was also granted; the lower court ruled that it was seized incident to an unlawful arrest made without probable cause. The trial court then ruled that the remaining evidence was unsubstantial and the motion to quash the information was granted.

On appeal the people contend that the trial court erred in granting both motions to suppress. They argued that the arrest was lawful because it was supported by probable cause based on the likenesses between the two murders. According to this argument, the prior arrest of the defendant for the George murder, even though the charges were later dismissed, coupled with the similarities, was sufficient to constitute probable cause to arrest without a warrant.

Authority for a police officer to arrest without a warrant is grounded in statute. In relevant part, MCLA 764.15(c); MSA 28.874(c) provides that "Any peace officer may, without a warrant, arrest a

person * * * When a felony in fact has been committed and he has reasonable cause to believe that such person has committed it". Reasonable or probable cause stems from some fact, circumstance, or information which creates an honest belief in the mind of a reasonable and prudent man; that is, there must be good reason to believe that the person arrested has committed a felony. *People v Napolitano,* 2 Mich App 601; 141 NW2d 356 (1966); *lv den,* 378 Mich 729. The facts upon which the belief is based must exist at the time of the arrest. *People v Major,* 34 Mich App 405; 191 NW2d 494 (1971). Information subsequently acquired can have no bearing upon this determination. *People v Gwinn,* 47 Mich App 134; 209 NW2d 297 (1973).

Actual facts creating an actual belief can alone give rise to probable cause. *People v Panknin,* 4 Mich App 19; 143 NW2d 806 (1966). An officer may not arrest on mere suspicion. *People v Griffin,* 33 Mich App 474; 190 NW2d 266 (1971); *lv den,* 385 Mich 775. Rather, the officer must entertain an honest, actual belief, based on reasonable grounds, that the arrested individual committed a felony. *People v Herrara,* 19 Mich App 216; 172 NW2d 529 (1969). *People v Johnnie Mae Jones,* 12 Mich App 369; 163 NW2d 22 (1968). A vague and general belief is not enough. *People v Reeves,* 23 Mich App 183; 178 NW2d 115 (1970).

The prosecution has the burden of establishing that an arrest without a warrant is supported by probable cause, and in so doing, the standard is at least as stringent as that applied where an arrest warrant is sought. *People v Dogans,* 26 Mich App 411; 182 NW2d 585 (1970). In the present case, the trial court indicated that the prosecution had not met this burden, and had arrested the defendant

as a means of obtaining additional evidence. An arrest made as subterfuge for a search and seizure may be considered unlawful on that basis alone. *People v Wolfe,* 5 Mich App 543; 147 NW2d 447 (1967); *lv den,* 379 Mich 756.

A prior record of criminal conduct can contribute to a finding of probable cause. *Hammitt v Straley,* 338 Mich 587; 61 NW2d 641 (1953). However, even a prior conviction for a similar crime is not enough, in and of itself, to provide probable cause to arrest without a warrant. *Odinetz v Budds,* 315 Mich 512; 24 NW2d 193 (1946). The United States Supreme Court in *Beck v Ohio,* 379 US 89; 85 S Ct 223; 13 L Ed 2d 142 (1964), held invalid an arrest without a warrant based on the fact that the defendant had a record of similar criminal activity even when coupled with concededly vague information from an informer and a police photograph of the suspect, because these facts were insufficient to constitute probable cause.

In the present case, the principal reason for the defendant's arrest was a similarity between the Fotion murder and the murder of Mrs. George, for which the defendant was arrested, but never tried. The only other factor of any significance was the defendant's presence within the general area at the approximate time of the crime. The pattern of behavior exhibited by one who engages in criminal activity, referred to here by the people as the *modus operandi,* may be of significant value in criminal identification. However, research has failed to disclose any Michigan case in which this information alone has been held to provide probable cause for an arrest without a warrant. The trial court concluded that, under the facts of this case, the officer lacked probable cause to arrest the defendant. The ruling of the trial court was discre-

tionary and it will not be reversed unless an abuse of discretion is shown. *People v Judge of the 7th Judicial District Court,* 55 Mich App 471; 222 NW2d 778 (1974). *People v Carl Smith,* 39 Mich App 337; 197 NW2d 528 (1972) *lv den* 387 Mich 797. We cannot say, on the basis of the record in this case, that the ruling was clearly erroneous or that the lower court abused its discretion. Consequently, the lower court did not err in granting the motion to suppress the blood-stained jacket as "fruit of the poison tree" growing out of the illegal arrest. *People v Gunn,* 48 Mich App 772; 211 NW2d 84 (1973).

The remaining issue involves the people's contention that the trial court erred by granting the defendant's motion to suppress the confession. The trial court ruled that the people had not met their burden of proving that the confession was voluntary and that the defendant was not made to understand his *Miranda* rights. The Court also ruled that the confession was the product of an illegal arrest and detention designed to extract evidence from the defendant, and suppressible on that basis as well.

At the conclusion of the evidentiary hearing, the trial court found as fact that the defendant did not understand his rights and that he was being held in order to permit the police to obtain additional information from him. In arriving at these findings, the Court was greatly assisted by the forthright testimony of the investigating officer, Sergeant Roffey. Sergeant Roffey testified that he read the defendant his rights from a prepared form, with no amplification or explanation despite his awareness of defendant's mentally deficient condition. He stated that the defendant did not "grasp the whole situation" and that he did not under-

stand many of the terms used in the notice-of-rights form. When asked why the prosecutor's office was not contacted to initiate formal proceedings against the defendant immediately after his arrest, Sergeant Roffey responded: "I wanted to find out more information regarding the crime". The inquiry at a *Walker*[2] hearing must be confined to the narrow issue of the voluntariness of the defendant's confession without regard to guilt or innocence. *People v Douglas,* 50 Mich App 372; 213 NW2d 291 (1973). This restriction will also be observed by a reviewing court which must examine the entire record and make an independent determination of the ultimate issue of voluntariness. *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). In so doing, the lower court's findings will be reversed as clearly erroneous only when the reviewing court is left with a definite and firm conviction that a mistake was committed. *People v Douglas, supra, People v Scott,* 44 Mich App 462; 205 NW2d 291 (1973).

Our examination of the record of the hearing in the present case leaves us with no such conviction. On the contrary, the evidence presented, especially the testimony of Sergeant Roffey, demonstrates that the defendant was so lacking in understanding of the circumstances surrounding the interrogation as to vitiate the voluntariness of his confession. This Court has not hesitated to reach a similar conclusion in cases involving persons of subnormal intellectual development who had been institutionalized for long periods of time, even when the police were unwilling to concede that the defendant lacked an understanding of his rights. *People v King,* 27 Mich App 619; 183 NW2d 843

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

(1970). *People v Stanis,* 41 Mich App 565; 200 NW2d 473 (1972). The decision of the trial court suppressing the confession is affirmed.

At the conclusion of the original preliminary examination, the defendant was bound over for trial primarily on the strength of fingerprint evidence taken from the victim's change purse, and without consideration of the confession. Whether there still exists sufficient evidence to warrant a trial is not for this Court to decide. The matter is remanded to Recorder's Court for another preliminary examination, unless the people move to dismiss.

Remanded for further proceedings consistent with this opinion.

All concurred.