## PEOPLE v FRANK SMITH

1. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—REASONABLENESS
   —PROBABLE CAUSE.

   A search and seizure is reasonable if it is authorized by a search
   warrant which is based upon probable cause; probable cause
   requires that the facts and circumstances within a person's
   knowledge be sufficient to warrant a man of reasonable caution
   to believe that the evidence in question will be found and a
   search warrant based on probable cause must describe the area
   to be searched and the items to be seized (US Const, Am IV).

2. SEARCHES AND SEIZURES—WITHOUT WARRANT—PROBABLE CAUSE—
   REASONABLENESS.

   A search without a warrant can no longer be justified by a
   finding that it was reasonable; a policeman searching without a
   warrant must have probable cause to believe that a search of
   the person or place in question will result in the finding of
   evidence of crime, and probable cause to believe that he must
   search immediately without taking the time to seek and obtain
   a warrant in order to protect himself, or in order to avoid the
   loss of evidence, or in order to prevent the escape of the
   accused, or for any other reason which outweighs the need for
   judicial surveillance over police activity which the search war-
   rant provides.

3. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—WITHOUT WAR-
   RANT—WAIVER.

   A third party cannot merely because of a particular relationship
   with a defendant, effectively waive the defendant's rights to be

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Searches and Seizures § 21 *et seq.*

[2] 47 Am Jur, Searches and Seizures § 16 *et seq.*

Lawfulness of nonconsensual search and seizure without warrant,
prior to arrest, 89 ALR2d 715.

[3, 4] 47 Am Jur, Searches and Seizures § 72 *et seq.*

Authority to consent for another to search and seizure, 31 ALR2d
1078.

[5] 47 Am Jur, Searches and Seizures § 6 *et seq.*

free from unreasonable searches and seizures (US Const, Am IV).

4. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—WITHOUT WARRANT—WAIVER.

Defendant's secretary, who was also his sister, could not consent, in defendant's absence, to a state trooper entering defendant's office, and, while seated at defendant's desk, examining a Monroe calculator to ascertain whether the serial number was the same as that of one of two calculators reported stolen because the office and desk were constitutionally-protected areas where the investigation of the theft of the two calculators had already focused upon defendant (US Const, Am IV).

5. SEARCHES AND SEIZURES—REASONABLENESS—AGENCY.

The constitutional right to be free from unreasonable searches and seizures is not ruled by strained applications of the law of agency or by unrealistic doctrines of apparent authority (US Const, Am IV).

Appeal from Genesee, Elza H. Papp, J. Submitted Division 2 October 3, 1972, at Lansing. (Docket No. 12460.) Decided October 25, 1972.

Frank S. Smith, Jr., was convicted of receiving or concealing stolen property. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, and *Joel B. Saxe* and *Martin F. Palus,* Assistant Prosecuting Attorneys, for the people.

*Gerald M. Lorence,* for defendant on appeal.

Before: QUINN, P. J., and McGREGOR and VAN VALKENBURG,* JJ.

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

McGREGOR, J. Defendant was found guilty by a jury of receiving or concealing stolen property, MCLA 750.535; MSA 28.803. Defendant was arrested on November 4, 1970, pursuant to a complaint and warrant issued that same day, charging him with "receiving or aiding in the concealment of stolen property", specifically a Monroe calculator, valued at greater than $100, stating further that the defendant knew the item to be stolen when he received it.

While awaiting trial, defendant moved to suppress certain physical evidence, specifically the Monroe calculator. After denial of this motion, the defendant moved for a rehearing on his motion to suppress, which was also denied. At trial, a jury found him guilty as charged, and defendant filed a timely claim of appeal.

Defendant's first contention on appeal is that the trial court erred in failing to exclude from evidence the Monroe calculator. Due to the fact that this Court reverses defendant's conviction on this point, the testimony is herein reviewed in detail. A Michigan State Police trooper was a witness at the hearing on the motion to suppress evidence; his testimony related that he visited the offices of the defendant during the course of his investigation of a breaking and entering at a local high school. The trooper stated that he had recovered a Monroe calculator which had been stolen from the high school, and that the person from whose possession it was recovered had indicated that he obtained it from the defendant. The trooper further stated that his purpose in visiting the defendant's office was to question the defendant as to where he obtained the high school calculator; the trooper indicated that he did not have a search warrant for defendant's premises, nor did

he have an arrest warrant for the defendant at the time of this visit. When the trooper arrived at the defendant's office, a secretary informed him that the defendant was not in but was expected shortly; thereupon the secretary telephoned the defendant and the trooper talked to him on the phone. The trooper further testified that he told the defendant during this phone conversation that he was a police officer and that he wished to speak to the defendant in person. The defendant replied that he would be in his office shortly, and the trooper waited to see him. While waiting, the trooper entered the private office of the defendant and saw a Monroe calculator in position on a desk in the office. Knowing that at least two of these machines had been reported stolen from the local high school, the trooper asked the secretary how long they had owned the machine and asked permission to check the machine. The secretary answered that she believed that they had owned the machine for six months and gave her permission for the trooper to check it.

The trooper believed the calculator in the defendant's office was the same as one he had recovered; he inspected the machine, obtained its serial number, and called the Monroe Calculator Company to see if they had a record of this machine. During his conversation with the Monroe Company, he was interrupted by the defendant's secretary, saying that the defendant wished to speak to the trooper on the phone. When the trooper talked to the defendant, the defendant told him to leave his office, which the trooper did. The trooper also testified that he did not recall seeing any signs on the walls of the defendant's office. The next morning, the defendant was placed under arrest.

The next witness at the suppression hearing was

the defendant's sister, being also the secretary who had talked to the trooper. The sister-secretary testified that she met the trooper, in full uniform, on the morning in question, and that, upon being advised that the trooper wanted to talk to the defendant, she called her brother from her phone at the desk in the front office. When she had established contact with her brother, she gave the phone to the trooper and went into the defendant's office, in the back of the building. She testified that the trooper came to the door of the defendant's private office, entered, and sat down. He did not speak to the secretary at this time. The secretary went back to the front part of the office; when she returned, the trooper was sitting in the defendant's chair, at his desk, looking at the Monroe calculator on the defendant's desk. The trooper asked permission to use the phone. The secretary does not remember the trooper asking for permission to check the calculator, but does remember that he asked how long the defendant had owned the machine. She then returned to the front office, called the defendant, and related that the trooper was in the defendant's office, looking at the machine and other articles in the office. The secretary also testified that there was a sign warning people not to sit at the defendant's desk and that her instructions were that all persons coming into the office were to wait in the reception room until they were given specific permission to sit elsewhere. The secretary stressed the point that no one was allowed to sit at the defendant's desk, to be behind his desk, or to touch any of his papers.

The defendant testified that he talked to the state trooper on the phone on the morning in question, told him he would be there soon, and told him to wait in the waiting room. However,

before the defendant could leave for his office, the secretary had called back and told him that the trooper was behind his desk, investigating the serial numbers of the machines. At defendant's request, the trooper came to the phone, and when the defendant had learned that he did not have a search warrant, he ordered the trooper to leave. The defendant also testified that the office rules were that no one was to be in his office in his absence, and repeated the fact that there was a sign warning people to stay away from behind his desk, that the sign could be seen before a person could sit down at the desk, and that the sign had been on the wall on the day of the trooper's visit. Defense counsel substantiated the visibility of this sign in defendant's office.

The trial court denied defendant's motion to suppress the evidence of the Monroe calculator.

At trial, plaintiff's proposed exhibit, the Monroe calculator, serial #B-884180, was introduced into evidence without objection.

The defendant contends, on appeal, that the testimony produced at the suppression hearing established that the defendant's office and his desk were constitutionally-protected areas. Defendant also argues that the plaintiff failed to establish any consent for the subsequent search of this inner office by the state trooper and, in addition, alleges that his secretary could not consent in his stead because the investigation had already focused on this defendant.

Defendant further contends that the trial court erred in holding that the Monroe calculator was not the product of an unlawful search and seizure in violation of the Fourth Amendment to the United States Constitution and art 1, § 11 of the Michigan Constitution of 1963. In denying the

motion to suppress, the trial court apparently relied exclusively upon the law enunciated in *Harris v United States,* 390 US 234, 236; 88 S Ct 992, 993; 19 L Ed 2d 1067, 1069 (1968), and *People v Eddington,* 23 Mich App 210, 218–227 (1970). The trial court found that the trooper was lawfully in defendant's office where he observed, in plain view, the Monroe calculator, and that items in "plain view" are subject to seizure, citing the *Harris* case. The trial court ruled that the trooper's examination of the calculator did not change the character of his actions from examining an item in plain view into an unlawful search.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const. Am IV.

This amendment is made obligatory upon the states by the due process clause of the Fourteenth Amendment. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1971).

It should be noted that the first clause of the Fourth Amendment prohibits unreasonable searches and seizures, and that the second clause prescribes requirements for warrants. Thus, a search and seizure authorized by a search warrant that meets the requirements of the second clause clearly qualifies as a reasonable search, and evidence so obtained will usually be admissible in any subsequent criminal proceeding. In order to meet the requirements of the second clause, the search warrant must be based upon probable cause. This probable cause requirement is usually met if the facts and circumstances within a person's knowl-

edge are sufficient to warrant a man of reasonable caution to believe that the evidence in question will be found. *Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543 (1924). It is clear that the Fourth Amendment requires that, if an area or place is to be searched, a search warrant based on probable cause, describing the area to be searched and the items to be seized, should first be issued.

It should be noted that numerous searches and seizures occur without a valid search warrant. The courts have encountered difficulty in determining whether or not the evidence seized by a warrantless search violates the dictates of the Fourth Amendment. In *State v Brothers,* 4 Or App 253, 256–258; 478 P2d 442, 444 (1970), it was held:

"Two opposing views have developed on the question of which of the Amendment's two clauses should be deemed controlling when applying the Amendment's prohibitions to searches conducted without a warrant. One school of thought, which gave the Amendment's first clause primacy, became law when the United States Supreme Court decided *United States v Rabinowitz,* 339 US 56; 70 S Ct 430; 94 L Ed 653 (1950). The court, in that case, said that the test for deciding whether a search without a warrant violated the Fourth Amendment was:

" ' * * * [N]ot whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case * * * .' 339 US at 66.

"In June of 1969, the Supreme Court overruled *Rabinowitz* in *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969), and restored the primacy of the Fourth Amendment's warrant clause. This court interpreted the new rule laid down in *Chimel* in *State v Keith,* 2 Or App 133; 465 P2d 724 (1970). In that case this court suggested that a policeman ask himself two questions before making a warrantless search:

" '(1) Do I have *probable cause* to believe that a search of the person or place in question will result in the finding of evidence of crime?

\*   \*   \*

" '(2) Do I have *probable cause* to believe that I must immediately search without taking the time to seek and obtain a warrant: (a) in order to protect myself (or others in the immediate vicinity), or (b) in order to avoid the loss of evidence, or (c) in order to prevent the escape of the accused, or (d) for any other reason which outweighs the need for judicial surveillance over police activity which the search warrant provides?' 2 Or App 142–143; 465 P2d at 728–729.

*"Chimel* and *Keith* establish for the police the necessity of obtaining a search warrant in all but exceptional cases. A search can no longer be justified by a finding that it was 'reasonable.' ' "

Michigan is in accord with the above reasoning as to warrantless searches. See *People v Mason,* 22 Mich App 595, 617–618 (1970).

The threshold question in this case is whether or not a third party, because of a particular relationship with a defendant, can effectively waive the defendant's Fourth Amendment rights to be free from unreasonable searches and seizures. The United States Supreme Court for the past ten years has reflected a sensitive response to the personal protection afforded to an individual within the realm of Fourth-Amendment issues of searches and seizures.

In *Stoner v California,* 376 US 483; 84 S Ct 889; 11 L Ed 2d 856 (1964), the defendant was absent from his hotel room when the hotel desk clerk admitted police officers without defendant's authorization. The argument expressed by the government on appeal to sustain the search of the hotel room was that, although the search was conducted without the defendant's consent, the search was

nonetheless lawful because it was conducted with the consent of the hotel clerk. The Supreme Court answered:

"It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, and not the night clerk's nor the hotel's. It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent. It is true that the night clerk clearly and unambiguously consented to the search. But there is nothing in the record to indicate that the police had any basis whatsoever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner's room."

The Supreme Court in *Stoner* recognized that, when a person engages a hotel room, he undoubtedly gives implied permission to maids, janitors, and repairmen to enter his room in the performance of their duties. But, as the Supreme Court noted, the presence of the hotel clerk and the police was of an entirely different order.

It is clear that the trooper did not have a warrant to search defendant's office. The United States Supreme Court has recently circumscribed the scope of warrantless searches, in *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969) and *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971).

In *Chimel,* a warrantless search incidental to an arrest in a private residence was narrowly confined and limited only to the defendant's person and to the area which the defendant could reach for a weapon or to destroy incriminating evidence. The defendant in *Chimel* was present at the time of the warrantless search. The search was executed by the police officers entering the defendant's bedroom, which was jointly occupied by his

wife. The Court held that the introduction at trial of the items seized from the marital bedroom were grounded upon an impermissible warrantless search. Logic compels the conclusion that the defendant's Fourth Amendment rights should not turn upon his presence or absence from the premises.

*Coolidge v New Hampshire, supra,* reiterated the most basic constitutional rule in the area of the Fourth Amendment: searches conducted outside the judicial process and without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. The court in *Coolidge* reversed the defendant's conviction of murder because of the introduction of illegally seized evidence. Despite the facts justifying strong probable cause which, the prosecution argued, established "exigent circumstances" that justified the warrantless search, the opinion held otherwise. The Supreme Court distinguished an inadvertent discovery of evidence in plain view from a warrantless search and stated, pp 470–471:

"But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different. The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as *'per se* unreasonable' in the absence of 'exigent circumstances.' "

In *United States v Blok,* 88 US App DC 326, 328; 188 F2d 1019, 1021 (1951), the issue presented was whether police officers can search, without a warrant, a desk assigned exclusively to an employee in

the employee's absence, if permission is obtained from the employee's official supervisor. The Court held that the Fourth Amendment's guarantee against unreasonable searches and seizures marks the right of privacy as one of the unique values of our civilization. The Court stated:

"No doubt a search of it [her desk] without her consent would have been reasonable if made by some people in some circumstances. Her official superiors might reasonably have searched her desk for official property needed for official use. But as the Municipal Court of Appeals said, the search that was made was not 'an inspection or search by her superiors. It was precisely the kind of search by policemen for evidence of crime against which the constitutional prohibition was directed.' * * * Their [her employers] consent did not make such a search by the police reasonable."

In the matter before us, the totality of the circumstances does not reflect that the warrantless search was "reasonable".

Applying the test of reasonableness, it is clear that a "reasonable" warrantless search requires the officer to have probable cause to search. In the instant case, the trooper had a mere suspicion that the Monroe calculator was the fruit of a crime, but mere suspicion does not equal probable cause. The trooper's search violated the Fourth Amendment.

The rights protected by the Fourth Amendment are not to be ruled by strained applications of the law of agency or by unrealistic doctrines of apparent authority. *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967). It is unnecessary and ill-advised to import—into the law surrounding the constitutional right to be free from unreasonable searches and seizures—subtle distinctions developed and refined by the common law which do not comport with our justly proud

claim of the procedural protections accorded to those charged with the crime.

Although the trooper testified that the secretary permitted his examination of the machine and the search for a serial number on it, the evidence of consent does not meet the rigid requirements established for waiver of a constitutional right. In any event, it is clear that the secretary's consent could not waive the constitutional rights of her employer. *United States v Blok, supra.*

The lower court erred in denying the motion for suppression of the evidence. In light of our conclusion as to the validity of evidence, the other alleged errors become moot.

Reversed and remanded.

All concurred.