PEOPLE v GWINN

Opinion of the Court

1. Criminal Law—Preliminary Examination—Evidence.

    At a preliminary examination, the prosecutor is required to show by legally admissible evidence that a crime has been committed and that there is probable cause to believe that the defendant is guilty of having perpetrated the crime.

2. Searches and Seizures—Without Warrant—Arrest.

    A valid arrest is not a condition precedent for a police officer's authority to conduct a search and seizure without a warrant; it is immaterial whether a search and seizure took place before or after defendant's arrest.

3. Searches and Seizures—Without Warrant—Probable Cause—Constitutional Law.

    The state and Federal Constitutions require the officer who conducts a search and seizure without a warrant to have probable cause for his action; probable cause is not a suspicion but rather stems from some fact, circumstance, or information which would create an honest belief in the mind of a reasonably prudent man (US Const, Ams IV, XIV; Const 1963, art 1, § 11).

4. Searches and Seizures—Without Warrant—Probable Cause.

    In reviewing a search and seizure made without a warrant for the existence of probable cause the court is limited to the facts, circumstances, and information known to the officer at the time of the search and seizure.

5. Searches and Seizures—Without Warrant—Probable Cause—Evidence.

    A police officer had probable cause to seize a radio which he saw in defendant's car while questioning her where defendant with

References for Points in Headnotes
[1] 21 Am Jur 2d, Criminal Law §§ 446, 449, 451.
[2–5, 7] 5 Am Jur 2d, Arrest §§ 26, 28.
[6] 29 Am Jur 2d, Evidence §§ 523–596.

her baby was parked on the shoulder of a highway across from a trailer court where he had gone to investigate a reported break-in, defendant in response to his asking whether anything was wrong said that her baby was sick and that she was cleaning up the mess that it had made in the car and would be returning home shortly but he could not detect an odor or any other circumstance indicating that the baby was ill, while talking to defendant he noticed the radio in her car fitting the general description of one reported taken in an earlier break-in some eight miles away, and where after defendant left the place, she proceeded toward her home about three miles, made a U-turn, drove back toward the trailer court, and parked in a parking lot for about 1 hour and 15 minutes until the officer again talked to her and seized the radio which had been moved from the floor to the dashboard behind the steering wheel.

6. CRIMINAL LAW—STATUTES—CONFESSIONS—VOLUNTARINESS.

The statute providing for prompt arraignment of persons charged with a felony has been construed to mean that an unnecessary and so unlawful delay of compliance with the statute, when done for prolonged interrogatory purposes and without proven justification, renders involuntary and so inadmissible whatever confessional admissions the detained person may have made while unlawfully detained, and the test to be applied under such circumstances to determine whether a detention renders a confession involuntary is not the reasonableness of the length of time a person is detained but whether the detention has been used to coerce a confession; where a defendant, prior to making any statements, was given the requisite warnings and where there was no showing that the defendant was detained prior to arraignment for the purpose of coercing a statement, an inculpatory statement made by the defendant was freely and voluntarily made and was properly admissible into evidence at a preliminary examination.

DISSENT BY HOLBROOK, J.

7. SEARCHES AND SEIZURES—WITHOUT WARRANT—PROBABLE CAUSE.

*A police officer did not have probable cause to seize a radio from the defendant's car where at the time he had no probable cause to believe the defendant had committed a felony, he did not arrest the defendant but awaited further developments to connect her with the crime before making the arrest, where the defendant was a woman whereas a man was sought as having perpetrated the crime in question, and where the only connect-*

*ing link was the possibility that the radio in defendant's car
might have been the radio that was taken during the commis-
sion of the crime.*

Appeal from Saginaw, Eugene Snow Huff, J.
Submitted Division 3 December 7, 1972, at Grand
Rapids. (Docket No. 12078.) Decided May 23, 1973.

Bethany Gwinn was convicted of aiding and
abetting a breaking and entering with intent to
commit a larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *George E. Thick II,*
Prosecuting Attorney, and *Roy deGesero,* Assistant
Prosecuting Attorney, for the people.

*Kerr & Strobel* (By *Ray J. MacNeil),* for the
defendant.

Before: T. M. BURNS, P. J., and HOLBROOK and
VAN VALKENBURG,* JJ.

T. M. BURNS, P. J. Defendant was convicted by a
jury of aiding and abetting a breaking and enter-
ing with intent to commit a larceny. MCLA 767.39;
MSA 28.979 and MCLA 750.110; MSA 28.305. She
was sentenced to a term of from 1-1/2 to 15 years
imprisonment and now appeals.

On October 30, 1970, a masked man armed with
a jackknife broke into a mobile home, sexually
assaulted the female occupant, and purloined a
radio upon leaving the premises. After the man
had departed, the victim's daughter telephoned the
state police and reported the crime. The investigat-
ing officer who responded to the call obtained a

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

description of the radio and a description of the assailant. The radio was described as a small, black, battery-operated, transistor-type measuring 7″ x 12″ with a handle at one end. The radio was designed to receive police calls and was thought to be a "Stewart" brand. The perpetrator of the crime was described as a white male, 5′10″ to 6′ tall, wearing a black leather jacket, dark trousers, and a multi-colored ski mask over his face. The descriptions of the radio and the suspect were broadcast to the state police units in the area.

Approximately one hour later, a prowler fitting the description noted above was involved in a similar incident at a mobile home some eight miles from the site of the first breaking and entering. While enroute to the scene of the second breaking and entering, a state police trooper observed the defendant and her small baby parked in an automobile on the shoulder of the highway across from the trailer court where the second crime had been reported.

The trooper stopped, approached defendant's vehicle, and asked her if she was experiencing any difficulty. Defendant responded that the baby was sick and that she was cleaning up the mess it had made in the car. The trooper, however, could detect neither an odor nor any other circumstance to indicate the infant was ill. The defendant also stated that she would be returning home shortly. From the vehicle registration, the trooper noted that the defendant's home was in Davison, Michigan and that the auto was registered in the name of her husband, Otis Kent Gwinn. In addition as he was questioning the defendant, the trooper noticed a small, black transistor radio on the right front floor of the defendant's automobile. The radio appeared to answer the description of the one

taken during the first breaking and entering earlier that evening.

Due to the defendant's answer with respect to the baby's illness, her close proximity to the second breaking and entering, and her possession of a radio fitting the general description of one taken in a break-in earlier that evening, the trooper connected the defendant with the first breaking and entering and kept the defendant's car under surveillance when she drove away.

First the defendant drove homeward in the direction of Davison, then made a U-turn three miles later and drove back toward the trailer court. Before reaching the trailer court, however, the defendant pulled into a parking lot. She remained parked there for about 1 hour and 15 minutes, at which time the trooper again approached the defendant's auto. After some conversation with the defendant about her intention of returning to Davison, the trooper reached into the defendant's vehicle and removed the black transistor radio which by this time had been moved from the floor of the auto to a position on the dash board behind the steering wheel.

There is a dispute as to what happened next. At defendant's preliminary examination, the trooper testified that he told the defendant she could follow him to the state police post if she wished. The trooper stated that the defendant was not under arrest at this time. At trial the trooper related that had the defendant chosen not to follow him, she would have been permitted to return home. The defendant on the other hand testified that she was ordered to follow the trooper back to the post.

Upon arriving at the state police post, the defendant, at the trooper's request, surrendered the

keys to her vehicle. The trooper, accompanied by another officer who had dressed himself in a light tan jacket and head scarf to resemble a silhouette of the defendant, drove the defendant's automobile back to the point where the defendant was initially questioned, *i.e.,* across the highway from the trailer court where the second break-in was reported. After waiting there a few minutes a man fitting the description of the prowler walked from the trailer court, approached the auto, opened the door on the driver's side, discovered the ruse, and fled. The officers alighted from the vehicle, gave chase, apprehended the suspect, and placed him under arrest. The suspect was taken back to the police post and identified as the defendant's husband. The officers then arrested the defendant. Defendant's arrest took place approximately one hour after the seizure of the radio from her automobile.

The radio was admitted into evidence at defendant's preliminary examination. Defense counsel objected on the ground that the radio was the product of an illegal search and seizure and was thus inadmissible.

At a preliminary examination, the prosecution is required to show by *legally admissible evidence* that a crime has been committed and that there is probable cause to believe that the defendant is guilty of having perpetrated the crime. MCLA 766.13; MSA 28.931; *People v Charles D Walker,* 385 Mich 565 (1971). Since the radio was admitted into evidence and formed part of the basis which led to the defendant being bound over for trial, we are confronted with the question of whether the radio was properly admissible notwithstanding the failure of the district court to pass upon the matter.

The radio in question was seized from the defendant's auto without a warrant approximately one hour prior to defendant's arrest. From this the defendant argues that the radio was inadmissible because the seizure was not made incident to an arrest. This argument is without merit.

A prior valid arrest is not a condition precedent for a police officer's authority to conduct a warrantless search and seizure. *People v Kuntze,* 371 Mich 419 (1963). Therefore it is immaterial whether the search and seizure of the radio took place before or after defendant's arrest.

Second, it is the defendant's position that the trooper lacked probable cause to seize the radio. Again we are constrained to disagree.

The Fourth and Fourteenth Amendments to the United States Constitution and Const 1963, art 1, § 11 require the officer who conducts a warrantless search and seizure to have probable cause for his action. *People v Frank Smith,* 43 Mich App 400 (1972).

Probable cause is not a suspicion but rather stems from some fact, circumstance, or information which would create an honest belief in the mind of a reasonably prudent man. *People v Nelson Pitts,* 40 Mich App 567 (1972); *People v Frank Smith, supra; People v Reeves,* 23 Mich App 183 (1970).

In determining whether the trooper had probable cause to seize the radio, we are limited to the facts, circumstances, and information known to the trooper at the time the radio was seized.

After a careful and thorough review of the record below, we are persuaded that the close proximity of the defendant to the scene of the second breaking and entering, her responses to the trooper's queries with respect to her infant's ill-

ness and her intention of driving home coupled with the failure to return home and her possession of a radio resembling the one stolen at a break-in earlier in the evening, created in the mind of the trooper an honest belief, *i.e.,* probable cause, that the defendant was connected to the mobile home break-ins and thereby justified the seizure of the radio.

Therefore, inasmuch as the trooper had probable cause to seize the radio, it was properly admissible into the evidence at defendant's preliminary examination.

Third, defendant argues that an inculpatory statement given by the defendant to the police prior to her arraignment was not sufficiently free and voluntary to warrant its admission into evidence at the preliminary examination. We disagree.

This question is controlled by both statute and case law. MCLA 764.26; MSA 28.885 provides:

"Sec. 26. Every person charged with a felony shall, without unnecessary delay after his arrest, be taken before a magistrate or other judicial officer and, after being informed of his rights, shall be given an opportunity publicly to make any statement and answer any questions regarding the charge that he may desire to answer."

This statute has been construed to mean:

"[T]hat an unnecessary and so unlawful delay of compliance with either of said sections 13 and 26, when done for prolonged interrogatory purposes and without proven justification * * * , renders involuntary and so inadmissible whatever confessional admissions the detained person may have made while so unlawfully detained." *People v Hamilton,* 359 Mich 410, 417 (1960).

More recently, it has been held that a 72-hour

prearraignment detention did not *per se* render the intervening confession involuntary. The test to be applied under such circumstances is:

"[W]hether such a detention renders a confession involuntary is not the reasonableness of the length of time a person is detained but whether the detention has been used to coerce a confession." *People v Farmer,* 380 Mich 198, 205 (1968).

Here the transcript of the defendant's statement indicates that before making any statements to the police, she was given the requisite *Miranda* and *Escobedo* warnings. Moreover, there is no showing that the defendant was detained prior to arraignment for the purpose of coercing a statement. Therefore the statement was freely and voluntarily made and was properly admissible into evidence at the preliminary examination.

Finally, the defendant asserts that absent the introduction of the radio and the defendant's statement to the police, there was insufficient evidence presented at the preliminary examination to show that a crime had been committed and probable cause to believe the defendant guilty.

Absent the radio and the defendant's statement, the prosecution would have been hard-pressed to show the commission of the crime, let alone probable cause. However, having concluded that the radio and defendant's statement were properly admissible, we hold that there was sufficient, legally-admissible evidence presented to support the magistrate's finding that a crime had been committed and there was probable cause to believe the defendant committed that crime. Under such circumstances, we will not substitute our judgment for that of the magistrate. *People v Szczytko,* 40 Mich App 161 (1972).

Affirmed.

VAN VALKENBURG, J., concurred.

HOLBROOK, J. *(dissenting)*. In this case in order for the seizure of the radio from the possession of the defendant to be valid, it was necessary for the people to show that the officer at the time had probable cause to believe defendant had committed a felony. The officer apparently did not have such probable cause at either time he stopped her because he did not arrest the defendant on either occasion but awaited further developments to connect her to the crime before making an arrest. The defendant, a woman, was not a man who was sought as having perpetrated the crime in question. The only connecting link was the *possibility* that the radio in defendant's car might be the radio that was taken during the commission of the crime. Although the officer had strong suspicions concerning the possibility of the radio being connected with the crime, he did not have probable cause to believe defendant had committed or was committing a felony. The mere fact that defendant had a radio in the car similar to the radio taken was not sufficient probable cause under the circumstances. *People v Kuntze,* 371 Mich 419 (1963).

The motion to suppress the radio should have been granted.