PEOPLE v SIMMONS

PEOPLE v CLARK

1. SEARCHES AND SEIZURES—WITHOUT WARRANT—CONSENT—RIGHT TO REFUSE ENTRY—WARNING.

Police officers were properly within the residence of a defendant's father where the father consented to their entry without a warrant; failure of the officers to advise the father that he could refuse entry to the police did not affect the consent.

2. SEARCHES AND SEIZURES—WITHOUT WARRANT—SCENE OF CRIME.

Objects found as a result of a search without a warrant in conjunction with an arrest were properly admissible into evidence where the area searched was the scene of at least a portion of the crime committed.

3. CRIMINAL LAW—WITNESSES—CREDIBILITY—EVIDENCE—PRESERVING QUESTION.

Failure to allow a jury to hear certain testimony which bore upon the credibility of the prosecution's main witness was not reversible error where no objection was voiced by defense counsel to the excusing of the jury and where a recapitulation of what transpired was reviewed for the jury by defendant's own attorney.

Appeals from Recorder's Court of Detroit, John R. Murphy, J. Submitted Division 1 May 8, 1973, at Detroit. (Docket Nos. 14607, 14171.) Decided August 28, 1973. Leave to appeal denied as to Simmons, 391 Mich —.

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur, Searches and Seizures §§ 71, 72.

Authority to consent for another to search or seizure, 31 ALR2d 1078.

[1, 2] Nature of interest in, or connection with, premises searched as affecting standing to attack legality of search, 78 ALR2d 246.

[2] 47 Am Jur, Searches and Seizures § 19.

Search warrant: sufficiency of showing as to time of occurrence of facts relied on, 100 ALR2d 525.

[3] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

Ronald L. Simmons was convicted of abduction and armed robbery. Lawrence Clark was convicted of abduction. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Samuel J. Smargon* and *Thomas M. Khalil,* Assistant Prosecuting Attorneys, for the people.

*Frederick B. Bellamy,* for defendant Simmons.

*Carl Ziemba,* for defendant Clark.

Before: J. H. GILLIS, P. J., and HOLBROOK and BASHARA, JJ.

BASHARA, J. Defendant Simmons was found guilty in a nonjury trial of the offenses of abduction and armed robbery. Defendant Clark was convicted by a jury of abduction but was found not guilty of the charge of armed robbery. From these convictions both defendants appeal.

The following facts are relevant to the disposition of this appeal. During the early morning hours of July 5, 1971, the complainant, a 70-year-old proprietor of a billiard parlor, was confronted by a man with a shotgun while in his business establishment. Defendant Simmons was identified at trial by complainant as being the man with the weapon. The complainant was instructed to call his wife and order her to bring any money in their home to the billiard hall. The complainant was driven to various locations, including an apartment building where he had previously lived.

The complainant notified the police after being released, and described his abductors. Later in the

day the complaining witness, accompanied by two police officers, returned to the apartment building. They rendezvoused with four other officers. Three of the officers, without a search warrant, went to the apartment occupied by defendant Simmons. The complainant stated that he knew that was the apartment but did not know who had abducted him.

The officers went up to the apartment and, upon knocking, defendant Simmons' father answered the door. None of the officers were in uniform. They identified themselves, asked if he had any sons, and he replied affirmatively. The officers then asked if they could speak to them. The father allowed them to enter. The officers went through the kitchen and saw defendant Simmons sleeping on a bed in a room which would normally be a dining room. However, a bed and a dresser were located there. One officer testified that they opened a curtain, entered the room, and arrested defendant Simmons, who answered the description given by the complainant. Another officer alleged that defendant Simmons' father led the officers into the room where the defendant was found. After the arrest, the shotgun used in the crime was discovered under the bed where defendant was sleeping. A subsequent search of the room disclosed a pistol and a watch which had been taken in the robbery. These items were introduced at trial after defendant Simmons' motion to supress was denied.

Defendant Simmons' sole contention on appeal is that the warrantless seizure of the shotgun from his bedroom was the result of an unreasonable search and seizure.

It should be emphasized that no testimony was offered by anyone other than police officers on the question of the entry into the apartment. They

indicated that the father invited them in after being asked if the officers could talk to his sons. The record also indicates that defendant Simmons' father was present in the courtroom but did not testify.

The first question to be decided is whether the police were proper in their entrance to the apartment where the defendant was located. Defendant Simmons argues that his father could not consent to the warrantless entry without testimony showing that the father was advised that he could refuse entry of the police.

The recent United States Supreme Court case of *Schneckloth v Bustamonte,* 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973), appears to dispose of the issue. In clear language the Court stated at pages 231 and 232 of its opinion (93 S Ct 2050; 36 L Ed 2d 865):

"For it would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning. Consent searches are part of the standard investigatory techniques of law enforcement agencies. They normally occur on the highway, or in a person's home or office, and under informal and un-structured conditions. The circumstances that prompt the initial request to search may develop quickly or be a logical extension of investigative police questioning. The police may seek to investigate further suspicious circumstances or to follow up leads developed in questioning persons at the scene of a crime."

In light of the foregoing, we hold that the police officers were properly within the residence of defendant Simmons' father.

The question of whether the police officers were properly within the room where defendant Simmons was allegedly sleeping is not so easy to determine.

This Court has previously held, in *People v Flowers,* 23 Mich App 523; 179 NW2d 56 (1970), that a parent could not consent to a search of a son's bedroom. In *People v Overall,* 7 Mich App 153; 151 NW2d 225 (1967), we held that a grandmother could not authorize the search of a grandson's bedroom. These cases appear to emanate from the rule enunciated in *Stoner v California,* 376 US 483; 84 S Ct 889; 11 L Ed 2d 856 (1964), that where a party has a right to privacy in a particular area of a building (in that case a hotel room), that right could not be waived by anyone save the one asserting the right.

However, this rule is not without exception. *People v Bunker,* 22 Mich App 396; 177 NW2d 644 (1970), stands for the proposition that parents have the right to consent to a search of premises open to all members of the family. It is equally clear that once legally upon the premises, if defendant Simmons was in view of the police officers having his description, the arrest and resulting search were proper.

There appears to be some question of whether the police themselves went to the room where the defendant was located, or whether the elder Mr. Simmons led them there. The lower court record, however, clearly reveals that before any search was conducted, defendant Simmons was recognized and arrested. We again refer to the compelling language of approval in *Schneckloth v Bustamonte, supra,* that:

"[t]he circumstances that prompt the initial request may develop quickly or be a logical extension of investigative police questioning."

There is no doubt that the area involved was the scene of at least a portion of the crime committed.

We therefore affirm the trial judge's ruling that the objects found as a result of the search after arrest were properly admissible into evidence. *Chimel v California,* 395 US 752; 87 S Ct 2034; 23 L Ed 2d 685 (1969); *People v Frank Smith,* 43 Mich App 400; 204 NW2d 308 (1972).

Defendant Clark finally alleges that error occurred when the jury was not privy to certain testimony which bore upon the credibility of the prosecution's main witness. The attorney for defendant Simmons was attempting to impeach the complaining witness as to his identification of defendant Lawrence Clark. Testimony at the preliminary examination raised the possibility that the complainant may have mistaken defendant Lawrence Clark for one Thomas Clark.

The trial court indicated that the jury should not hear the colloquy and that it was only admissible for impeachment purposes as it applied to defendant Simmons' case. In absence of the jury, the court questioned the witness as to whether he had identified Thomas Clark who had had his case dismissed. The witness answered affirmatively. Defendant Clark's attorney did not object to this procedure. The jury was returned and defendant Clark's attorney engaged in a brief recross-examination of the witness as to his mistaken identity of Thomas Clark. The complaining witness did, however, positively identify defendant Lawrence Clark as one of those participating in the abduction.

No objection was voiced to the excusing of the jury. Recapitulation of what transpired was reviewed for the jury by defendant's own attorney. We therefore find that this issue was not preserved for review and is not reversible error.

Affirmed.

All concurred.