PEOPLE v BROOKS

OPINION OF THE COURT

1. ARREST—ARREST WITHOUT WARRANT—FELONY—REASONABLE CAUSE
   —MERE SUSPICION—STATUTES.

   A police officer is authorized to make an arrest without a warrant
   when he has reasonable cause to believe that a felony has been
   committed and reasonable cause to believe that the person
   arrested has committed it; however, there is no reasonable or
   probable cause to validate an arrest without a warrant where,
   under the circumstances of the arrest, it is clear that the police
   were acting on no more than mere suspicion in making the
   arrest (MCLA 764.15; MSA 28.874).

2. EVIDENCE—CRIMINAL LAW—ILLEGAL ARRESTS—EXPLOITATION OF IL-
   LEGALITY OF ARREST—TAINTED EVIDENCE—PURGE OF TAINT.

   Evidence against a defendant emanating from an illegal arrest of
   that defendant should be suppressed by the trial court where
   the evidence was procured by an exploitation of the illegality of
   the arrest; however, where the evidence was procured by means
   sufficiently distinguishable from the illegal arrest to be purged
   of the primary taint it should not be suppressed.

DISSENT BY V. J. BRENNAN, J.

3. ARREST—MISDEMEANORS—POLICE OFFICER'S PRESENCE—PERSONAL
   OBSERVATIONS—VEHICLE IDENTIFICATION NUMBERS.

   *An arrest is proper where a misdemeanor is committed in a
   police officer's presence or if, from personal observation, the
   officer has reason to believe that a misdemeanor was committed
   in his presence; therefore, an arrest of a defendant was proper
   where a police officer observed that the vehicle identification*

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arrest §§ 26, 28.
[2] 29 Am Jur 2d, Evidence §§ 408, 409, 425–427.
[3] 5 Am Jur 2d, Arrest §§ 2, 34–36.
[4] 68 Am Jur 2d, Searches and Seizures §§ 43, 45, 99.
[5] 68 Am Jur 2d, Searches and Seizures §§ 34, 57, 106.

number on the car driven by the defendant appeared clearly out of line and the officer reasonably concluded that he was witnessing the commission of a misdemeanor.

4. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—AUTOMOBILES—
VEHICLE IDENTIFICATION NUMBERS.

An inspection of an automobile to determine the vehicle identification number is not a search within the meaning of the Fourth Amendment (US Const, Am IV).

5. SEARCHES AND SEIZURES—INVENTORY SEARCHES—ARREST—EVI-
DENCE.

An inventory search of a defendant following a formal, valid arrest is proper and evidence obtained in this search, which is incriminating to the defendant, is admissible against the defendant.

Appeal from Oakland, Richard D. Kuhn, J. Submitted April 7, 1976, at Lansing. (Docket No. 18081.) Decided July 19, 1976. Leave to appeal applied for.

Leland Brooks was convicted of receiving stolen property with a value in excess of $100. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *James L. McCarthy,* Assistant Appellate Counsel, for the people.

*Scupholm & Underwood,* for defendant.

Before: T. M. BURNS, P. J., and V. J. BRENNAN and D. E. HOLBROOK, JR., JJ.

T. M. BURNS, P. J. On July 31, 1973, defendant was convicted by a jury of receiving stolen property with a value over $100. MCLA 750.535; MSA 28.803. He was sentenced to 40 months to 5 years in prison. Claim of appeal was filed on February 17, 1975.

Defendant challenges the legality of his arrest and subsequent warrantless searches.

On March 13, 1972, Michigan State Police officers were investigating a stolen car ring. The surveillance team was observing a 1972 Mark IV automobile, the vehicle identification number (VIN) of which one of the police officers discovered to be bogus. In the same parking lot as the suspect automobile was a 1969 Cadillac and a Ford Maverick, both of which were noticed by the police officers. All three vehicles were driven out of the parking lot at the same time and travelled together. The surveillance team followed the vehicles to a gas station at which all three cars had stopped.

At the gas station, Officer McKee, a Southfield police officer who had joined the surveillance team, approached the Cadillac and asked the driver, defendant herein, for his driver's license and car registration. The license was in defendant's name and the registration was in the name of Mr. Benning. A check was made on the documents. The registration checked out with the license plates and the Cadillac's VIN also matched.

Another member of the surveillance team, Officer George, took defendant and the Cadillac to the Southfield police station. At the police station, defendant was formally placed under arrest and an inventory search was made. The Cadillac was examined and it was discovered that the VIN plate was bogus, that two of the VIN numbers were out of line on the plate, and that the VIN number did not match the identification numbers located on the engine block and frame. It was determined that the car was stolen, and defendant was charged with receiving stolen property.

Defendant challenges the legality of his arrest,

arguing that the police had no probable cause to believe that a felony had been committed.

A police officer is authorized to arrest without a warrant when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it. MCLA 764.15; MSA 28.874. Chief Judge DANHOF's opinion in *People v Langston,* 57 Mich App 666; 226 NW2d 686 (1975), contains a concise statement of the law relative to determining the validity of a warrantless arrest:

"Reasonable or probable cause stems from some fact, circumstance, or information which creates an honest belief in the mind of a reasonable and prudent man; that is, there must be good reason to believe that the person arrested has committed a felony. *People v Napolitano,* 2 Mich App 601; 141 NW2d 356 (1966), *lv den [sub nom People v Kedzierski],* 378 Mich 729 [1966]. The facts upon which the belief is based must exist at the time of the arrest. *People v Major,* 34 Mich App 405; 191 NW2d 494 (1971). Information subsequently acquired can have no bearing upon this determination. *People v Gwinn,* 47 Mich App 134; 209 NW2d 297 (1973).

"Actual facts creating an actual belief can alone give rise to probable cause. *People v Panknin,* 4 Mich App 19; 143 NW2d 806 (1966). An officer may not arrest on mere suspicion. *People v Griffin,* 33 Mich App 474; 190 NW2d 266 (1971), *lv den,* 385 Mich 775 [1971]. Rather, the officer must entertain an honest, actual belief, based on reasonable grounds, that the arrested individual committed a felony." 57 Mich App at 672.

There can be little dispute that defendant was under arrest when he accompanied the police officer to the Southfield police station. The initial stop and investigation of defendant at the gas station may well have been justified under *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889

(1968), but once he was taken to the police station, he was effectively within the custody of the police and was not free to leave.

At the time of defendant's arrest, the police knew that defendant was travelling in a group of cars which included a known stolen vehicle, the Mark IV. One of the officers testified that when he observed the Cadillac at the gas station, it appeared to him that two of the numbers on the VIN plate were out of line with the others. On the other hand, defendant presented proper identification and the car registration matched the plates and the VIN number. There is no indication in the record that the police knew that the Cadillac had been stolen or that the defendant had previously been involved with stolen cars. Under these circumstances it is clear that the police were acting on no more than mere suspicion in arresting the defendant. As such, there was no reasonable or probable cause to validate the warrantless arrest.

Having found defendant's arrest to have been invalid, we are presented with the difficult question of whether the evidence against defendant emanating from that invalid arrest should have been suppressed by the trial court.[1] This Court has recently held that the question in such a situation is whether the evidence was procured by an exploitation of the illegality of the arrest or whether the evidence was procured by means sufficiently distinguishable to be purged of the primary taint.[2] We first consider the evidence of the proper vehicle identification numbers.

After defendant's arrest, the Cadillac which he was driving was taken to the police station. There

---

[1] *Cf. People v Jones,* 66 Mich App 223; 238 NW2d 813 (1975), and *People v White,* 392 Mich 404; 221 NW2d 357 (1974), *cert den,* 420 US 912; 95 S Ct 835; 42 L Ed 2d 843 (1975).

[2] *See People v Jones, supra,* footnote 1.

a car theft expert examined the VIN plate and found that it had been tampered with. He then checked the vehicle identification numbers on the engine block and frame and found them to be different than the number on the VIN plate.

This search of the automobile obviously cannot be justified as a search incident to a valid arrest. Nor is the "exigent circumstances" doctrine available as the vehicle was removed to the police station.[3] The "plain view" exception to the warrant requirement does not justify the examination of the vehicle identification numbers. Again, no exigent circumstances existed and the discovery of the evidence was not inadvertent; the police searched a specific location for a specific object. See *People v Heard,* 65 Mich App 494; 237 NW2d 525 (1975). *Cf. People v Frank Smith,* 43 Mich App 400; 204 NW2d 308 (1972).

The prosecutor has offered no acceptable basis upon which the warrantless search of the vehicle and the resulting evidence against the defendant might be justified. The evidence of the correct vehicle identification numbers, that the VIN plate had been tampered with and the resulting evidence that the car had been stolen should have been suppressed. The trial court's failure to suppress the evidence was reversible error.

Defendant also contends that certain evidence discovered on his person by the police subsequent to his arrest should have been suppressed. At the police station, defendant was taken to the booking area and asked to turn over his possessions including his shoes and socks. While defendant was removing one of his socks, an officer noticed a small piece of paper inside the sock. The *folded* piece of paper was taken by the officer and opened.

---

[3] *See People v White, supra,* footnote 1.

The paper proved to be a temporary driver's license issued to one Willie Benman. This license was used in evidence against the defendant at trial. Since the incarceration of the defendant was unjustified, the inventory search which produced the temporary driver's license was invalid. *Cf. People v Dixon,* 392 Mich 691; 222 NW2d 749 (1974). The license should have been suppressed, and its admission into evidence was reversible error.

Reversed and remanded to the trial court.

D. E. HOLBROOK, JR., J., concurs in the result only.

V. J. BRENNAN, J. *(dissenting).* I must respectfully dissent from my brother BURNS' opinion.

I do agree with him that the initial stop and investigation of defendant at the gas station was justified. *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Defendant was brought under surveillance and was stopped by police because he was driving a vehicle clearly travelling in tandem with two other automobiles, one of which was known to be stolen. The stolen automobile, a Continental Mark IV, was known to have a false VIN plate. All of the vehicles had been originally observed together at the Telegraph House Motel before leaving the motel in a group. In addition, they all travelled in identical route for several blocks to the gas station. Certainly the police officers acted reasonably in stopping and investigating defendant when the vehicles pulled up at the gas station.

However, my opinion diverges from the majority at this point. Taking into account these highly suspicious circumstances, I find reasonable cause to arrest appeared when, upon checking the VIN

plate on the dashboard of defendant's vehicle, the officers discovered that the numbers were out of line and appeared altered.

This Court recognizes that an arrest is proper where a misdemeanor is committed in the officer's presence or if, from personal observations, the officer has reason to believe a misdemeanor was committed in his presence. MCLA 764.15(a); MSA 28.874(a). *Gallagher v Secretary of State (On Rehearing)*, 59 Mich App 269, 272–273; 229 NW2d 410 (1975), *People v Dixon*, 392 Mich 691, 695; 222 NW2d 749 (1974), *People v Davenport*, 46 Mich App 579, 582; 208 NW2d 562 (1973).

In this state, altering or replacing vehicle identification numbers is a misdemeanor. MCLA 750.415; MSA 28.647. Consequently, when the numbers in the automobile defendant was driving clearly appeared out of line, the officers could reasonably conclude that they were witnessing the commission of a misdemeanor by defendant.[1]

I cannot agree that any "search" within the meaning of the Fourth Amendment occurred when police searched the automobile defendant was driving subsequent to his arrest. *People v Valoppi*, 61 Mich App 470, 477–479; 233 NW2d 41 (1975). In *Valoppi*, police also searched underneath an automobile for the vehicle identification number which led to the defendant's arrest. I concurred with the Court in that opinion. There, we cited the follow-

[1] Nevertheless, I would note this Court has ruled that, even were the arrest illegal, subsequent proceedings are not void where the illegal arrest was followed by a complaint and warrant on which defendant was held for trial, or, where defendant was legally bound over to the circuit court for trial. *People v Henry Robinson*, 37 Mich App 115, 118; 194 NW2d 537 (1971), *People v Nawrocki*, 6 Mich App 46, 53–54; 148 NW2d 211 (1967). This point becomes relevant given my finding that no other error occurred prior to defendant's formal arrest, shortly after the search of the VIN indicated the vehicle was stolen.

ing language from *United States v Polk,* 433 F2d 644, 647 (CA 5, 1970).

" 'Our recent decision in *United States v Johnson,* 413 F2d 1396 (CA 5, 1969), affirmed en banc, August 13, 1970, held that such a limited inspection of a vehicle identification number is not a search within the meaning of the Fourth Amendment. The rationale for this holding is that an automobile owner can have no reasonable expectation of privacy with respect to the car's VIN. See *Mancusi v DeForte,* 392 US 364; 88 S Ct 2120; 20 L Ed 2d 1154 (1968). The "reach of [the Fourth] Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure". *Katz v United States,* 389 US 347, 353; 88 S Ct 507; 19 L Ed 2d 576 (1967).

" 'Vehicle identification numbers are put on automobiles by the manufacturers to aid in identifying the vehicles. There are so many similar cars that individual vehicles can be identified only through the use of such individual numbering. State laws contain many requirements for disclosing and recording such VIN's, showing a generally accepted mode of disclosure and the lack of any reasonable expectation of privacy with respect to the numbers.

" 'Most states require that automobiles be registered with a state agency to establish a record of car ownership. The registration, which must be carried in the car, identifies the car by its VIN. These requirements proceed from a purpose to keep track of the ownership of potential instruments of personal and property injury, so that drivers in automobile accidents can be traced and so that compulsory insurance requirements can be enforced. Additionally, the state seeks to protect ownership rights in these mobile and expensive assets. License plates are not sufficient for these purposes because of their easy removability.

" 'It is routine practice for policemen stopping cars in traffic control operations to ask for the automobile registration papers in addition to the driver's license. Viewing registration papers is part of the accepted regulatory scheme.

" 'VIN's are typically disclosed to private parties also. Automobile purchase and sale documents usually identify the car by its VIN. Automobile insurance policies also identify cars by their VIN's. There can therefore be no reasonable expectation of privacy with respect to the identity of the VIN. Opening the car door, looking under the hood, or crawling under the car to inspect the rear axle does not independently bring an inspection of the VIN within the scope of the Fourth Amendment.

" 'A car is not a home. An automobile runs and stops on the public roads, where viewers may crawl under it or press their faces against its windows. Its exterior and much of its interior are within the "plain view" of the casual or purposeful onlooker, and thus are not protected by the Fourth Amendment from searching eyes. See, *e.g., Marshall v United States,* 422 F2d 185 (CA 5, 1970); Wright, Federal Practice and Procedure § 668 (1969).

" 'Thus the VIN on the rear axle or on the car frame are outside any reasonable expectations of privacy. Those that may be seen only by opening the car door or hood are no more private: doors and hoods are continually opened to the eyes of observers.' " 61 Mich App 470, 478–479.

I am constrained to follow that prior opinion in this matter. Consequently, regardless of whether the arrest was illegal or not and I feel it was not, the search for the proper VIN was not an illegal "search" and the results were admissible at trial.

Neither can I find defendant's final allegation of error regarding the temporary license able to withstand analysis. I have stated that grounds for a valid arrest occurred when officers discovered the vehicle identification numbers out of line. Certainly defendant was properly placed in custody after the automobile was confirmed as stolen upon finding the correct VIN.

Only following formal, valid arrest was an in-

ventory search of defendant conducted. That search produced the folded paper, later found to be a temporary license, which defendant was attempting to conceal from the police. This Court has upheld the admissibility of evidence discovered in a similar situation. *People v Walker,* 58 Mich App 519, 524–525; 228 NW2d 443 (1975). In *Walker,* the fact that a tinfoil packet found to contain heroin was opened during an inventory search did not bar its admissibility. The present case is indistinguishable. See also *People v Dixon,* 392 Mich 691, 700; 222 NW2d 749 (1974) (where the Court did not specifically rule on whether the search of several small packets found on defendant was proper or not, though the propriety was arguably condoned by implication), *People v Henry Robinson,* 388 Mich 630, 632–633; 202 NW2d 288 (1972) (where evidence of initials observed on a lighter was properly admitted). I believe the search was proper here and the evidence admissible.

Having examined all the errors defendant alleges, I would affirm the conviction.